*890 OPINION OF THE COURT
David O. Boehm, J.
Upon a defense motion on November 6, 1979 at a preliminary hearing in the case of People v Acomb, respondent, Honorable John J. Weidman, Town Justice of the Town of North Dansville, New York, ordered the exclusion from the hearing of witnesses, the media and other members of the public. In this CPLR article 78 proceeding in the nature of prohibition, the petitioners, Gannett Co., Inc. and James Redmond seek judgment: (1) prohibiting enforcement of and vacating the order of November 6, 1979 nunc pro tune, (2) directing admission of petitioners and the public nunc pro tune, (3) directing that petitioners be provided access to a transcript of the preliminary hearing, and (4) enjoining Justice Weidman from closing criminal proceedings to the press or public without first providing interested persons with notice and an opportunity to be heard in opposition.
Gannett owns and operates the Democrat and Chronicle, a morning daily newspaper published in Rochester, Monroe County, which has a paid circulation of 4,300 in Livingston County, an adjoining county, out of a total population of 58,000 to 60,000. Redmond is a reporter for the Democrat and Chronicle, assigned to cover the preliminary hearing at issue here. Theodore E. Wiggins is the District Attorney of Livingston County and was at the preliminary hearing to present the People’s proof.
On November 11, 1978, Acomb allegedly shot 19-year-old William B. De Lavergne somewhere in Livingston County. On November 15, 1978, Acomb was charged by indictment of the Livingston County Grand Jury with attempted murder in the second degree and assault in the first degree. A year later, on November 3, 1979, De Lavergne died at a Rochester hospital and Acomb was rearrested and charged with murder in the second degree. A preliminary hearing with respect to the new charge was scheduled for November 6, 1979 at 4:30 p.m. in North Dansville Town Court.
Before the hearing began, defense counsel moved that the public be excluded. Wiggins, in response, took no position either way. At that point, Redmond, reading a prepared statement, objected to closure and requested a hearing on constitutional and statutory grounds. Defense counsel argued in response that his motion was being made under CPL 180.60 *891 (subd 9), which clearly provides for exclusion of the public from preliminary hearings upon defense counsel’s motion.
Following a short colloquy with defense counsel, Justice Weidman ordered the exclusion of both the press and the public and, with defense counsel’s consent, allowed a Village Justice to remain and observe the hearing. It is this order which petitioners seek to vacate in the proceeding now before the court.
(1) Petitioners argue that access to all court proceedings is a right guaranteed to the public and to the press by the First Amendment and "by section 8 of article I of the New York Constitution, the New York equivalent of the First Amendment. However, in Matter of United Press Assns. v Valente (308 NY 71, 77, 87) the Court of Appeals unanimously held that access to court proceedings is not a constitutional right under either of those provisions. The question came before that court on two subsequent occasions, and it declined to reconsider its position (Matter of Oliver v Postel, 30 NY2d 171, 179; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430). Accordingly, this is not at present an open question in this State.
This court fully agrees with the petitioners that the First Amendment protects the flow of information to the public concerning judicial proceedings, indeed all governmental proceedings. It is beyond cavil that the public has the right to be informed of what takes place in our courts and that the press may not be prohibited from reporting events that transpire inside of them (see, e.g., Nebraska Press Assn. v Stuart, 427 US 539).
But such constitutional protection does not extend to compelling the courts to fling wide their doors in all cases and at all times. Indeed, petitioners concede that any constitutional right to attend criminal proceedings is not absolute; i.e., Grand Jury proceedings, appellate court and jury deliberations, juvenile proceedings, testimony of undercover police officers and "skyjacker profiles”. Other examples could be mentioned.
The law’s rationale to date for this position, although not reached by the United States Supreme Court in Gannett Co. v De Pasquale (443 US 368), may be seen in Justice Stewart’s seminal address at Yale Law School on November 2, 1974. Insofar "as the Constitution goes,” he observed, "the autonomous press may publish what it knows, and may seek to learn *892 what it can.” (Stewart, Or of the Press, 26 Hastings LJ 631, 636.) While the press is "free to do battle against secrecy and deception in government,” it "cannot expect from the Constitution any guarantee that it will succeed. There is no constitutional right to have access to particular government information, or to require openness from the bureaucracy. The public’s interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect * * * The Constitution, in other words, establishes the contest, not its resolution.” (Stewart, Or of the Press, 26 Hastings LJ, p 636.)
(2) Petitioners next argue that the right of courtroom access, even if not expressly within the First Amendment, is a penumbral right arising by implication from the First and Sixth Amendments. The penumbra analysis "combines constitutional texts in order to establish a region of basic human right, and then determines whether a given activity falls within that protected region.” (Note, The Right to Attend Criminal Hearings, 78 Col L Rev 1308, 1327.)
While there is some authority for the proposition that the media may have a First Amendment right to gather news (Branzburg v Hayes, 408 US 665, 681, 707), the only right explicitly guaranteed to the media by the First Amendment is that of freedom from prior restraints on publication of information already in its possession (Near v Minnesota, 283 US 697; New York Times Co. v United States, 403 US 713; Nebraska Press Assn. v Stuart, 427 US 539, supra). Indeed, media access to the courtroom has always been subordinate to the right of the accused to receive a fair trial (Estes v Texas, 381 US 532; Sheppard v Maxwell, 384 US 333). In specific regard to courtroom closure, the public has been found to have no assertable right of access to court proceedings under the Sixth Amendment (Gannett Co. v De Pasquale, 443 US 368, supra) and no right of access to judicial or governmental proceedings has yet been found under the First Amendment (see, e.g., Nixon v Warner Communications, 435 US 589, 608-610; Pell v Procunier, 417 US 817, 834). Accordingly, it would, at best, be premature to find that petitioners have a penumbral right of access here.
(3) There is, however, a common-law right of access (see Gannett Co. v De Pasquale, 443 US 368, 387-388, supra). In New York State this right is embodied in section 4 of the Judiciary Law. The statute creates a right of access to court *893 proceedings which may be asserted, as here, by the press (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437, supra). However, the right is not absolute. Even in situations in which the exceptions contained in section 4 of the Judiciary Law are not involved, the court has the inherent power to exclude the public and the press in order to " 'preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and generally to further the administration of justice’ ” (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, 377, citing People v Jelke, 308 NY 56, 63).
The boundaries of the common-law right of access to pretrial judicial proceedings were delineated in England as early as 1811 (Rex v Fisher, 2 Camp NP 563), but were not directly dealt with in New York until Matter of Gannett Co. v De Pasquale (43 NY2d 370, supra). There, the Court of Appeals sustained the lower court’s closure in a pretrial suppression hearing, but required that the interest of the media and the public be considered prior to closure of a pretrial proceeding: "the courts should of course afford interested members of the news media an opportunity to be heard, not in the context of a full evidentiary hearing, but in a preliminary proceeding adequate to determine the magnitude of any genuine public interest. This may be found to outweigh the risks of premature disclosures.” (Matter of Gannett Co. v De Pasquale, 43 NY, at p 381.)
The court also held that to satisfy the public interest, redacted transcripts could be made available while the defendant was still in jeopardy and pointed out that complete, unredacted transcripts had been made available by the trial court when the two defendants were no longer in jeopardy (Matter of Gannett Co. v De Pasquale, 43 NY, at p 381).
The United States Supreme Court, affirming De Pasquale (443 US 368, supra) focused on the constitutional aspects of closure of pretrial proceedings. It specifically held that the Sixth Amendment guarantee of a public trial belongs to a defendant alone, and that the public has no standing to assert that right on its own behalf. In so doing, the court found that the public interest in enforcement of the Sixth Amendment is fully protected by the participants in the litigation (see, also, Matter of Oliver, 333 US 257; Estes v Texas, 381 US 532, supra). It declined, however, to determine whether the First and Fourteenth Amendments guarantee the public in general, *894 or the press in particular, a right of access to criminal proceedings.
In Matter of Westchester Rockland Newspapers v Leggett (48 NY2d 430, supra), which involved the closure of a pretrial competency hearing, the New York Court of Appeals clarified its holding in De Pasquale (supra). The considerations in Leggett were, however, different from those in De Pasquale. De Pasquale was concerned with the potential for prejudicial disclosure of potentially inadmissible evidence of guilt, while Leggett dealt with the possible disclosure of evidence relating to the defendant’s fitness to stand trial, which "would ordinarily reveal little or nothing about his possible guilt of the crimes charged.” (Matter of Westchester Rockland Newspapers v Leggett, supra, p 441.)
In reversing and ordering release of the transcript, the Court of Appeals established an explicit set of procedural prerequisites to be followed by counsel and the courts where a pretrial court proceeding closure is sought, requiring a motion in open court, the demonstration of a "strong likelihood” of prejudice, the making of a record and the expression by the court of its reasons for closure.
Petitioners urge, in addition, that the guidelines recommended by the American Bar Association (ABA, Standards Relating to the Administration of Criminal Justice: Fair Trial and Free Press [2d ed, tent draft, 1978], § 8-3.2) and indorsed by a number of recent commentators * be adopted as well.
From those guidelines, petitioners suggest invocation of a three-part test. Prior to closing a pretrial proceeding, the presiding Judge must find (1) a substantial probability that the defendant’s right to a fair trial will be irreparably damaged; (2) a substantial probability that alternatives to closure will not adequately protect the defendant’s right to a fair trial; and (3) a substantial probability that closure will be effective in protecting against the perceived harm. In support of this argument, petitioners have called the court’s attention *895 to decisions in a number of States which have adopted variations of such a test in establishing their own guidelines (see Williams v Stafford, 589 P2d 322 [Wyo]; Keene Pub. Corp. v Keene Dist. Ct., 117 NH 959; Detroit Free Press v Macomb Circuit Judge, 405 Mich 544; Florida v Bundy, 4 Med L Rptr 2629 [Fla]).
In this case, the third guideline proposed is especially significant. At oral argument petitioners candidly pointed out that the contents of a confession given by Acomb to the police were known to Redmond prior to the preliminary hearing. In light of this, petitioners argue, closure of the preliminary hearing had no efficacy whatsoever in preventing the disclosure of the contents of any incriminating statements that may have been made by Acomb.
This court rejects out of hand the suggestion that efficacy is a factor to be considered (but cf. Florida v Bundy, supra) and further rejects the concomitant argument that voluntary cooperation between the courts and the media is an equally effective method of insuring a fair trial. Unfortunately, experience has not always proven this to be the case. The right to be protected is the defendant’s right to a fair trial in the courts and it is the court’s duty to insure that right by protecting the integrity of its own processes (Matter of Gannett Co. v De Pasquale, 43 NY2d, at pp 377-378). While disclosure of information from other sources may well prejudice a defendant’s ability to obtain a fair trial from an impartial jury, the added weight of attribution of that information to a sworn witness in a court proceeding necessarily renders courtroom disclosure more convincing and more damaging than disclosure of the same information from an unsworn, undisclosed, confidential source. Accordingly, petitioners’ "efficacy” standard is not a proper consideration.
In light of the fact that the Court of Appeals in Matter of Westchester Rockland Newspapers v Leggett (48 NY2d 430, supra) established clear criteria for making a closure determination, this court declines petitioners’ invitation to adopt the other proposed standards as well. By requiring a finding that there is a strong likelihood that evidence relevant and admissible at the pretrial hearing would prejudice the defendant’s trial if it were disclosed to potential jurors or would involve matters expressly covered by section 4 of the Judiciary Law (Matter of Westchester Rockland Newspapers v Leggett, supra, p 442), the Court of Appeals has established a test which *896 is more than adequate to protect all of the interests involved in every criminal case. It cannot be said that the standard makes no provision for recognition of the public interest, for requiring a hearing and requiring that reasons for closure be given in open court is ample recognition of that interest. To require specific findings of greater detail might well have the effect of miring the court in procedure to the point of losing sight of the essential substantive issues.
(4) The final question presented is whether a preliminary hearing should be treated differently for closure purposes than other pretrial proceedings in light of CPL 180.60 (subd 9) which provides: "The court may, upon application of the defendant, exclude the public from the hearing and direct that no disclosure be made of the proceedings.”
Initially, it is worth noting that neither De Pasquale (supra) nor Leggett (supra) involved an express statutory sanction for closing a pretrial proceeding. Rather, both cases used policy considerations to balance the conflicting interests involved.
CPL 180.60 (subd 9) was first set forth in the original New York Field Code of Criminal Procedure, published in 1850. In the Final Report of the New York Commission on Practice and Pleadings, the rationale for this provision was explained: "[I]f the examination must necessarily be public, the consequence may be that the testimony upon the merely preliminary examination will be spread before the community, and a state of opinion created which, in cases of great public interest will render it difficult to obtain an unprejudiced jury. The interests of justice require that the case of the defendant should not be prejudiced, if it can be avoided; and no one can justly complain that until he is put upon his trial, the dangers of prejudgment are obviated ... To guard the rights of the defendant against a secret examination, the section provides that it shall not be conducted in private, unless at his request.” (Final Report of Commissioners on Practice and Pleadings [1850], Code Crim Pro, § 202, pp 94-95.)
The provision was enacted into law in 1881 (L 1881, ch 442, § 203). As enacted, it "provided that the exclusion of the public was mandatory if the defendant so requested. By amendment in 1888, the court was granted discretion to exclude the public or permit it to remain.” (Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 180.60, p 74.)
Petitioners’ position that CPL 180.60 (subd 9) is not control *897 ling appears to be based upon two arguments. Their first is that the statute’s draftsman, David Dudley Field, was motivated by his antipathy for the press (see Geis, Preliminary Hearings and the Press, 8 UCLA L Rev 397, 408-409). While such ad hominem arguments are of interesting historical note, they provide little insight into the validity of a duly enacted legislative pronouncement which was not only adopted in New York, but in other States as well (see Geis, Preliminary Hearings and the Press, 8 UCLA L Rev 397, 409, n 68; Gannett Co. v De Pasquale, 443 US 368, 391, n 23, supra.) Petitioners’ second claim, that De Pasquale’s recognition of the court’s inherent right to conduct closed criminal proceedings renders this statute superfluous, ignores the fact that De Pasquale dealt with a suppression hearing for which there is no statutory mandate in either direction.
The question comes down to whether, and to what extent, the CPL’s statutory authority for closure of the courtroom vitiates the hearing requirement of De Pasquale and the procedural guidelines of Matter of Westchester Rockland Newspapers v Leggett (48 NY2d 430, supra).
In many respects, the considerations which should guide a Trial Judge in determining the propriety of closing a preliminary hearing are identical to those enunciated by the Court of Appeals in De Pasquale (supra) with respect to suppression hearings. Preliminary hearings, like suppression hearings, often involve confessions, eyewitness identifications, contraband and fruits of evidence of crimes, "the type of proof which may often be considered extremely persuasive, if not conclusive evidence of guilt.” (Matter of Westchester Rockland Newspapers v Leggett, supra, p 438). Moreover, as respondents’ counsel pointedly observed at oral argument, the information elicited at a preliminary hearing is potentially more damaging than that brought out at a suppression hearing, inasmuch as the focus of a preliminary hearing is on the acts of the defendant, while a suppression hearing is primarily concerned with the conduct of the police in gathering evidence. Finally, the disclosures made at a preliminary hearing are not subject to verbal comment by counsel or a ruling by the court as to their ultimate admissibility at trial and their effect as evidence of the crime charged, while suppression hearings are concerned with exactly these matters.
"[A]lmost invariably only one side of the case — the prosecution’s — is presented at a preliminary hearing. It is also impor *898 tant to note that the public is undoubtedly ill-informed of the distinction between a preliminary hearing and a trial, and that an action binding over the defendant is probably more often than not taken as a testament of guilt rather than a finding of probable cause to hold.” (Gels, Preliminary Hearings and the Press, 8 UCLA L Rev, 397, 412.) In view of the foregoing, the court has a particular responsibility to guard against premature public disclosure of prejudicial evidence at the inquisitorial stage. To do so, it must have at hand, at a minimum, the means allowed the courts in De Pasquale (supra) and Leggett (supra). "Of primary consideration is the public’s interest in avoiding any developments that would threaten to truncate a defendant’s right to a fair trial” (Matter of Gannett Co. v De Pasquale, 43 NY2d, at p 380). This was recognized as early as 1848 in the drafting of the predecessor of CPL 180.60 (subd 9). Accordingly, there would appear to be little question as to a Trial Judge’s authority to order exclusion of the press and the public from preliminary hearings if there is a strong likelihood of public disclosure of prejudicial information.
Respondent Acomb likens the preliminary hearing stage of the criminal process to the Grand Jury inquisition which is, by statute, closed to public inquiry (CPL 190.25, subd 4). This analogy, however, is not well drawn. While the nature of the proof may be similar, and the quantum of proof required less than that in a Grand Jury proceeding, the fact remains that a preliminary hearing is an adversary proceeding in open court at which the defendant is, in most instances, represented by counsel. As such, it falls squarely within the ambit of section 4 of the Judiciary Law which speaks to "[t]he sittings of every court within this state”.
By providing that the court may, upon the motion of the defendant, close the courtroom, the Legislature has made express provision for discretionary closure in CPL 180.60 (subd 9). As it is discretionary rather than mandatory, the statute contemplates the existence of some criteria for its exercise and, in the absence of any authority to the contrary, the standards enunciated in Matter of Westchester Rockland Newspapers v Leggett (48 NY2d 430, supra) with respect to section 4 of the Judiciary Law should apply with equal force to situations arising under CPL 180.60 (subd 9). See, also, Matter of Times-Union of Capitol Newspaper Div. of Hearst Corp. v Harris (71 AD2d 333, 337) where the Third Depart *899 ment held in reversing the closure of arraignment proceedings, "every motion for closure must be made in open court and proceed in harmony with the guidelines set forth in Westchester Rockland (supra)” (see, also, People v Boyd, 59 AD2d 558).
(5) This court is not unmindful of the fact that preliminary hearings, unlike other pretrial proceedings, must be held within 72 hours of incarceration (CPL 180.80). Respondents claim that a requirement that notice be given to the media might in some way chill the statutory rights of the defendant, compel the court to release the defendant, or motivate the prosecutor to seek a speedy indictment. This claim, however meritorious it might be, cannot be sustained in light of the express mandate of the Court of Appeals that notice and an opportunity to be heard be afforded interested members of the news media (Matter of Gannett Co. v De Pasquale, 43 NY2d, at p 381).
Given the fact that the media will have notice of the arraignment, which will almost always be public, some provision can be made for notice either at that time or shortly thereafter. As a practical matter, delay need not occur if defense counsel is diligent and attentive to the exigencies of his case. In most cases involving the possibility of prejudicial publicity the court and counsel will know well in advance of the preliminary hearing the potential impact of an open proceeding. Parenthetically, it is worth noting that at least one jurisdiction has adopted a rule requiring 24 hours’ notice to media representatives of any motion effecting their ability to cover criminal proceedings (United States v Baker, 5 Med L Rptr 1417 [WD Wash]).
In light of the discussion above, the petition is granted to the extent of vacating the closure order.
However, the record before this court is inadequate to permit any further determination. There is neither a full transcript of the proceeding nor disclosure by respondents’ counsel of the evidence presented at the hearing. The court is thus unable to make a judgment as to the propriety of the closure nunc pro tune on this record.
Accordingly, this case is remanded to the Town Court of North Dansville, New York, with instructions to hold a hearing and make findings in accordance with the standards established in Matter of Westchester Rockland Newspapers v Leggett (supra). Should the court find that sufficient cause to *900 exclude the public did exist, it should allow petitioners access to a properly redacted transcript of the proceeding (Matter of Gannett Co. v De Pasquale, 43 NY2d, at p 381, supra) and, in such case, petitioners should be allowed access to an unredacted transcript when the defendant is no longer in jeopardy. If no such finding is made, the petitioners are to be allowed access to the proceeding nunc pro tune by being permitted to obtain an unredacted transcript.

 Note, Fair Trial/Free Press, 47 Geo Wash L Rev 319, 338; Note, The Right to Attend Criminal Hearings, 78 Col L Rev 1308, 1331; Note, Trial Secrecy and the First Amendment Right of Public Access to Judicial Proceedings, 91 Harv L Rev 1899, 1916-1917; Note, Free Press/Fair Trial, 24 Vill L Rev 107, 120; Note, The Free Press-Fair Trial Dilemma: New Dimensions in a Continuing Struggle, 6 Hofstra L Rev 1013; Note, Exclusion of the Press and Public from Pretrial Criminal Proceedings to Guarantee Fair Trial, 25 Wayne L Rev 883; Fenner & Koley, The Rights of the Press and the Closed Court Criminal Proceeding, 57 Neb L Rev 442, 492-522.