DICKINSON NEWSPAPERS, INC., Meyer Broadcasting Company, KBMR Radio, Inc., the Associated Press, and North Dakota Newspaper Association, Petitioners,

v.

The Honorable Donald L. JORGENSEN, Judge of the County Court, Stark County, North Dakota, Respondent.

Civ. No. 10479.

Supreme Court of North Dakota.

Aug. 4, 1983.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson and Pearce, Anderson & Durick, Bismarck, for petitioners; argued by Jack McDonald, Jr., and Patrick W. Durick, Bismarck.

Donald L. Jorgensen, Dickinson, pro se.

Owen Mehrer, State's Atty., Dickinson, filed amicus curiae brief, appeared and made comment but made no argument.

Irvin B. Nodland of Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, appeared for respondent John J. Huber, filed no brief but made comment.

SAND, Justice.

County Court Judge Donald L. Jorgensen (respondent), pursuant to NDCC § 29–07–14, issued an order closing the preliminary examination-hearing of John J. Huber (Huber), the defendant, charged with four counts of murder and one count of attempted murder. Huber, with the concurrence of the state's attorney, requested the closing order. The county court requested and received briefs from all interested parties before issuing the order.

The petitioners, Dickinson Newspapers, Inc., The Associated Press, Meyer Broadcasting Company, KBMR Radio, Inc., and North Dakota Newspaper Association (news media) petitioned this court for a supervisory writ and for an ex parte order staying the preliminary hearing until the Supreme Court ruled on the petition for a supervisory writ. We granted the stay order and took the petition for a supervisory writ under consideration.

 Initially, we conclude that the petitioners, even though they could not intervene as a party and are not parties in the preliminary examination proceedings, are in a position to request this court to exercise its original jurisdiction because no other remedy is available, and this is a matter of vital concern to the public. *State ex rel. Foughty v. Friederich*, 108 N.W.2d 681 (N.D.1961); *State ex rel. Lyons v. Guy*, 107 N.W.2d 211 (N.D.1961); *State v. Broderick*, 75 N.D. 340, 27 N.W.2d 849 (1947). However, we add a caveat for the future that the failure to include the real party of interest as a party respondent (Huber in this instance) may constitute justification for denying a petition asking this court to exercise its original jurisdiction. Had Huber been named a party respondent, he would have represented the action taken by the judge. He was not named as a party and, as a result, the county judge, who did not issue the order sua sponte but only responded to Huber's motion which was joined in by the state's attorney, was not represented by counsel before this court. The party or parties that brought about the issue in question should have been made a party and should have represented the judge.[1]

The petitioners contended and argued that the preliminary examination pursuant to the State and Federal Constitutions had to be open to the public and the press, except in very limited circumstances, and that by closing the preliminary examination

---

1. Counsel for the defendant Huber appeared in our court and made a short statement, but did not file a brief or present any argument in support of the closure order because the defendant was not named as a party. The state's attorney filed an "amicus" brief which was neutral, not supporting either side. The judge also made a brief statement, explaining the difficult situation in which he has been placed, and declined to speak on the issues presented.

without giving adequate reasons, the county court abused its discretion.

 The provisions for preliminary examination (hearing) were formerly governed by statute but are now contained in Rules 5(c) and 5.1 of the North Dakota Rules of Criminal Procedure. They basically provide that a person charged with a felony has a right to a preliminary examination, unless waived. This procedure is in harmony with Section 10, Article I, of the North Dakota Constitution, which provides:

"*Until otherwise provided by law,* no person shall, for a felony, be proceeded against criminally, otherwise than by indictment . . . ." [Emphasis added.]

The term "by law" is not limited to statute but includes rules adopted by the Supreme Court pursuant to the court's authority contained in Section 3, Article VI, North Dakota Constitution. In effect, a preliminary examination is in lieu of the grand jury proceedings and indictment contained in NDCC, Chapter 29–10.1.

 The purpose of the preliminary examination is to determine if a crime has been committed and if probable cause exists requiring the accused to stand trial. The preliminary examination is not a trial nor is it a pretrial proceeding. In reality, it is a proceeding to determine if a trial should be held to determine the guilt or innocence of the accused. It is also a safety device to prevent the accused's detention without probable cause.

 Generally at the preliminary examination (hearing), only the prosecution presents evidence of his version of the matter. This may include hearsay and other prejudicial testimony not admissible at the trial, including evidence obtained by illegal means, and thus, in certain circumstances, may violate the accused's constitutional right to a fair trial if such prejudicial testimony is made public before the trial. The accused may cross-examine, take the stand, or present testimony, but seldom does.

 A preliminary examination not being a trial or a pretrial proceeding, the North Dakota constitutional provisions found in Section 9, Article I, providing that all courts shall be open [accessible for redress], and the Sixth Amendment of the United States Constitution do not apply with the same force and effect as they apply to trials. But Section 12, Article I, providing that the "accused shall have the right to a speedy and public trial . . .," which is primarily for the benefit of the accused, applies.

 The preliminary examination proceedings are governed by Criminal Rules 5 and 5.1 and NDCC Chapter 29–07. Rule 5.1 specifically provides that: "the magistrate may receive evidence that would be inadmissible at the trial." The closing of the preliminary examination by excluding all except specified persons is authorized by NDCC § 29–07–14, which provides as follows:

"Persons not excluded.—The magistrate holding a preliminary hearing, upon the request of the defendant, may exclude from the examination every person except his clerk, the prosecutor and his counsel, the attorney general of the state, the state's attorney of the county, the defendant and his counsel, and such other person as he may designate, and the officer having the defendant in custody, but such exclusion, and the extent thereof, shall be within the *discretion of the court.*" [Emphasis added.]

Even if the preliminary examination were considered a meeting it would be governed by Article XI, Section 5 of the North Dakota Constitution, which, in effect, provides that any body which is supported or which expends public funds in holding a meeting such meeting shall be open unless "otherwise provided by law." NDCC § 29–07–14 provides otherwise.

The petitioners, in support of their position, erroneously relied upon the rationale of *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505 (N.D.1980), which held that a state's attorney's inquiry must be open to the public and the press. However, it does not apply to this case because the state's attorney's inquiry is not governed or controlled

by a special statute, or rule, or provision, such as applies to the instant case authorizing the exclusion of all but certain persons. See NDCC § 29–07–14. Furthermore, in *KFGO Radio, Inc. v. Rothe, supra,* we recognized that the right of access to judicial proceedings was limited by the constitutional right to a fair trial.

The constitutionality of NDCC § 29–07–14 has not been challenged by the petitioners. A similar statute was upheld in *Azbill v. Fisher,* 84 Nev. 414, 442 P.2d 916 (1968), and *State v. Meek,* 9 Ariz.App. 149, 450 P.2d 115, 31 A.L.R.3d 808 (1969), *cert. denied* 396 U.S. 847, 90 S.Ct. 73, 24 L.Ed.2d 98 (1969). [This Arizona case was decided before the provision which made the exclusion of every person mandatory upon request of defendant was deleted.] Our research did not disclose nor was any case presented in which a statute authorizing the closing of a preliminary hearing was declared invalid.

■ Uniformity among the states regarding the use of the preliminary examination does not exist. Some states providing for a preliminary examination generally have a statute or rule regulating its use and authorizing the magistrate to exclude the public. Some states make the exclusion mandatory at the request of the defendant. Others give the magistrate discretionary authority. See 31 A.L.R.3d 816 (1970) and 49 A.L.R.3d 1007 (1973). North Dakota is among the states granting discretionary authority to the magistrate to "close" the preliminary examination. This does not mean that the proceedings will be private or secret. *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). It merely permits the magistrate to exclude all persons, except certain named functionaries, from the preliminary examination. This should not be confused with the exclusion of all witnesses who are to testify but have not. The record is not sealed but usually will be available to the public after the jury has been selected for the trial or if and after the case has been dismissed.

In states having a mandatory rule or statute requiring the exclusion of all unauthorized personnel, the magistrate has no discretion but, at the request of the accused, must close the preliminary examination. *San Jose Mercury-News v. Municipal Court, Etc.,* 30 Cal.3d 498, 179 Cal.Rptr. 772, 638 P.2d 655 (1982) [statute providing for closure to public and media from preliminary hearings without a showing of prejudice on a case-by-case basis is not unconstitutional]; *State v. McKenna,* 78 Idaho 647, 309 P.2d 206 (1957) [court's failure to exclude persons from preliminary hearing did not prejudice defendant and added that the enforcement of the statute was procedural rather than jurisdictional]; *Azbill v. Fisher,* 84 Nev. 414, 442 P.2d 916 (1968) [statute was later changed making exclusion of persons discretionary, see *Davis v. Sheriff, Clark County,* 93 Nev. 511, 569 P.2d 402 (1977)]; *Schavey v. Roylston,* 8 Ariz.App. 574, 448 P.2d 418 (1968); and *State v. Meek,* 9 Ariz.App. 149, 450 P.2d 115, 31 A.L.R.3d 808 (1969), *cert. denied,* 396 U.S. 847, 90 S.Ct. 73, 24 L.Ed.2d 98 (1969) [the rule in Arizona has been changed by deleting the mandatory provision, see *Phoenix Newspapers, Inc. v. Jennings,* 107 Ariz. 557, 490 P.2d 563, 49 A.L.R.3d 1000 (1971), where relief was denied because accused did not request closing the preliminary examination on grounds that the evidence, inadmissible at trial, would be introduced at the hearing, and *Phoenix Newspapers, Inc. v. Winsor,* 111 Ariz. 475, 533 P.2d 72 (1975), where opinion by a famous "per curiam" judge denied relief because the accused failed to show that he could not have a fair trial later].

In states having a discretionary rather than a mandatory closing of the preliminary examination, a mere request is not sufficient to justify a closing. In *Davis v. Sheriff, Clark County,* 93 Nev. 511, 569 P.2d 402 (1977), the court, in effect, held that because the defendant did not contend that the court abused its discretion in refusing to close the hearing, no error was committed.

New York has a statute similar to NDCC § 27–01–02, commanding that "the sitting of every court within this state shall be public, and every citizen may freely attend same," Judiciary Law § 4. It also has a

statute giving the magistrate discretionary authority to close the preliminary hearing.

The New York court, under the aforementioned law, in *Gannett Co., Inc. v. Weidman,* 102 Misc.2d 888, 424 N.Y.S.2d 972 (1980), concluded that the record was inadequate for the appellate court to make a determination whether or not the closing was a proper exercise of discretion where the judge issued the order without any findings and after a short colloquy with the defense counsel. The court remanded for a hearing and appropriate findings by the lower court and, if no proper findings were made, the petitioners were to have access to the transcript when the defendant was out of jeopardy, but only to a redacted transcript if a proper finding was made.

The New York court in *Westchester Rockland Newspapers v. Leggett,* 48 N.Y.2d 430, 423 N.Y.S.2d 630, 399 N.E.2d 518 (1979) observed that the very purpose of a suppression hearing was to determine whether or not certain evidence should be submitted to the jury at trial. If suppression hearings had to be open to the public and the press in a well-publicized case, it is probable that the evidence would be disclosed to the community from which the jury would be drawn even though the court may ultimately rule that the evidence should not be submitted to the jury at trial. The court noted that wide publicity would destroy the purpose for which a suppression hearing was held and would perversely have the opposite result and effect of that intended and desired. In this respect a suppression hearing is so similar to a preliminary hearing in guarding the defendant's rights to a fair trial that some of the principles of law and justice applicable to a suppression hearing also apply to a preliminary hearing.

The case of *San Jose Mercury-News v. Municipal Court, Etc.,* 30 Cal.3d 498, 179 Cal.Rptr. 772, 638 P.2d 655 (1982), even though it involved a mandatory closing statute while ours is discretionary, is significant because of the similarity in constitutional provisions and the respondent judge not having been represented by counsel as was the situation in the instant case. In *San Jose Mercury-News, supra,* the petitioner relied upon *Gannett Co., Inc. v. De Pasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), and raised substantially the same issues presented in the instant case. California has a provision similar to New York requiring the sitting of every court of justice to be open to the public except in divorce and sedition cases. The case technically had become moot but because of the importance of the question affecting the public interest, the court answered the questions raised.

The California court, after discussing pertinent constitutional provisions and analyzing some cases on the topic, including United States Supreme Court cases, concluded that the public, including the press, had no constitutional right of access to a preliminary hearing; that the state constitutional "public trial" guaranty does not provide an unqualified right in the public or in news media to attend a preliminary hearing; and that the statute providing for closure without a showing of prejudice is not unconstitutional because it is a permitted means of protecting the defendant's right to a fair criminal trial, including one free of juror bias.

The California court also noted that: "In *Branzburg v. Hayes* (1972) 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 a five-justice majority suggested that 'without some protection for seeking out the news, freedom of the press would be eviscerated.'" *San Jose Mercury-News, supra,* 179 Cal.Rptr. at 774, 638 P.2d 657.

The court, however, continued by observing that:

"Many incidental burdens on access to information, the [United States Supreme] court said, are proper. For example, the media enjoy no special right of access to places where public presence is properly restricted; they are 'regularly excluded from grand jury proceedings, our own conferences, the meetings of other official bodies gathered in executive session, and the meetings of private organizations' (p. 684, 92 S.Ct. p. 2658)." *San Jose*

*Mercury-News, supra,* 179 Cal.Rptr. at 774, 638 P.2d 657.

The California court further noted that the United States Supreme Court in *Zemel v. Rusk,* 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965), regarding the First Amendment to the United States Constitution, said: "The right to speak and publish does not carry with it the *unrestrained* right to gather information." [Emphasis in original.] *San Jose Mercury-News, supra,* 179 Cal. Rptr. at 774, 638 P.2d at 657.

In *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978), the court had under consideration similar issues involving the closing of a preliminary hearing under similar constitutional and statutory provisions. The Hawaii court used the same rationale as the California court (*San Jose Mercury-News, supra*) and held that the closure order was directed at the public at large and was not limited to the news media, and thus the order did not abridge the news media's First Amendment right to freedom of the press; and that traditional notions of fair play and impartial justice required a departure from the fundamental policy of open judicial proceedings if there was a substantial likelihood that an open hearing would interfere with the defendant's right to a fair trial by an impartial jury. The court, however, found that in the absence of sufficient basis for the closure, the petitioners were entitled to an order requiring the preliminary hearing to be open. The lower court judge, in issuing the closure, gave only general reasons, such as the notoriety of the defendants and the case, and the criticism surrounding the court itself (several judges had removed themselves), and that, as a result, the defendants could find it very difficult or impossible to get a fair trial. The court concluded that these were insufficient reasons.

The petitioners also contended that the principles of law announced in the United States Supreme Court cases of *Globe Newspaper Co. v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), and *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), modified *Gannett Co., Inc. v. De Pasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), and, accordingly, the closing of the preliminary hearing was error. We do not agree. Both *Globe* and *Richmond Newspapers* involved actual trials, not a preliminary hearing as is the situation here. In the *Globe* case the Supreme Court invalidated a statute requiring a trial involving rape to be closed, and in the *Richmond Newspapers* case the closing of a murder trial (fourth time around) was the issue. It was the notoriety of the trial itself, whereas here we are concerned about probable pretrial publicity arising out of the preliminary hearing, not a trial. In a sense, a preliminary hearing on the constitutional issues is comparable to a pretrial suppression hearing.

We realize the important role the news media has in the administration of justice. It not only makes public the events of the courts, its rulings and decisions, but also serves as a catalyst for openess and, as such, promotes fairness and trust.

"Secrecy of judicial action can only breed ignorance and distrust of courts and suspicion concerning the competence and impartiality of judges . . . ." *Nebraska Press Assn v. Stuart,* 427 U.S. 539, 587, 96 S.Ct. 2791, 2816, 49 L.Ed.2d 683 (1976). We, however, should note that the closure of a preliminary hearing does not make it secret. Certain functionaries remain in attendance. Only the general public is excluded, which includes the news media. The New York court in *Westchester Rockland Newspapers v. Leggett, supra,* noted that the public awareness of proceedings may serve to instill a sense of public trust in the judicial process. As has often been said:

"Justice must not only be done; it must be perceived as being done." *Westchester Rockland Newspapers v. Leggett, supra,* 399 N.E.2d at 522.

In this respect the United States Supreme Court said:

"... The press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice." *Cox*

*Broadcasting Corporation v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975).

In *State v. Rueb,* 249 N.W.2d 506, 510 (N.D.1976), we said:

> "Our Constitution provides for public trials and the public's right to know has become engrafted on our system of government by appropriate laws. The star chamber proceedings have never been favored under our judicial system. The State's Attorney represents the public. He was entitled to a notice."

The state's attorney in a Rule 35, NDRCrimP reduction of sentence hearing had not been given notice. We said this was error.

We advocate the policy of openness in judicial proceedings and adhere to the traditional notions and concepts that fair play and impartial justice are indispensable necessities which are promoted by openness and, as such, preliminary examinations generally should be open to the public. However, if, upon motion by the defendant and a hearing thereon, the magistrate finds and determines that evidence inadmissible at the trial on the issue of guilt or innocence will be admissible at the preliminary examination, which is designed to only determine probable cause and, as a result, there is a substantial likelihood that such evidence will interfere with the defendant's right to a fair trial and impartial jury, then a departure from this policy and concept will be justified.

We cannot ignore the fact that pretrial publicity of inadmissible evidence can defeat the defendant's constitutional right to a fair and public trial. Pretrial prejudicial publicity has caused the reversal of a conviction. *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

The news media does not occupy a special status distinct from that of the general public. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 595, 98 S.Ct. 1306, 1310, 55 L.Ed.2d 570, 578 (1978); *Nebraska Press Association v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); and *Gannett Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978). The news media's right to be present stems from being a member of the public and, as such, it may freely report whatever occurs in open court, not as a special privilege, but as a member of the public. *Nixon v. Warner Communications, Inc., supra; Estes v. Texas, supra;* and *Gannett Pacific Corp. v. Richardson, supra.*

The United States Constitution does not provide the press an affirmative right of access to pretrial proceedings. *Gannett Co., Inc. v. De Pasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Neither does the First Amendment of the United States Constitution give the news media a penumbral right of access to the courtroom in all criminal cases. *Gannett Co., Inc. v. Weidman,* 102 Misc.2d 888, 424 N.Y.S.2d 972 (1980). The constitutional right to a public trial is primarily for the benefit of the defendant. *Gannett Co., Inc. v. De Pasquale, supra. Gannett* involved a pretrial suppression matter. Nevertheless, the principles of law preserving the right to a fair trial announced therein apply to preliminary hearings. The news media's access to the courtroom is subordinate to the defendant's right to a fair trial. *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The news media under the North Dakota Constitution does not have any greater right than it has under the United States Constitution. Consequently, the opinions of the United States Supreme Court on this topic have full application in this state. If anything is different, it is the caveat contained in Article I, Section 4, North Dakota Constitution, in effect providing that the persons who write, speak and publish their opinions are "... responsible for the abuse of that privilege."

The remedies available to the accused, such as continuance, change of venue, and voir dire, have their own built-in limitations or drawbacks. For that matter, a reversal of a conviction because of preju-

dicial publication of inadmissible evidence is not a remedy. Nor is the granting of a continuance a remedy because the accused may be or is required to give up the constitutional right of a speedy trial. On a change of venue the accused gives up the right to a trial in the locality of the crime, 49 A.L.R.3d 1013 (1973). It may also become unbearably expensive for the accused to obtain, develop and introduce statistics regarding the media circulation and ratings and other such matters. In addition, it may become a severe financial burden upon the government, county or state. In a voir dire the risk exists that a potential juror may not be absolutely frank in responding to questions. But in this state we have reason to believe that the potential jurors respect the oath they have taken and will answer questions truthfully, forthrightly and conscientiously. Gag orders or restraints upon publication can involve equal or even greater intrusions on speech and press rights. *Nebraska Press Assn v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); and *San Jose Mercury-News v. Municipal Court, Etc.*, 30 Cal.3d 498, 179 Cal.Rptr. 772, 638 P.2d 655 (1982).

Finally, we do not believe a waiver of the preliminary hearing by the defendant to avoid prejudicial publication is a remedy. The development of such a situation is more in the nature of an unfair imposition on the defendant's statutory right. Huber's counsel stated to this court that in order to protect the defendant's constitutional right to a fair trial he probably would waive the preliminary hearing if the closure order is vacated. This illustrates the "Catch-22" predicament—a choice between Scylla and Charibdis—which a defendant faces when confronted with an open preliminary hearing in a well-publicized case and the option to waive the right to a preliminary hearing.

This leads us to the obvious conclusion that the rights of the public, including the news media, cannot overshadow or deprive the defendant of his constitutional rights, including a fair trial.

We now come to the ultimate issue whether or not Judge Jorgensen, under the provisions of NDCC § 29–07–14, abused his discretion in issuing the closure order. Our court has previously held that if a judge acts in an arbitrary, unreasonable, or unconscionable manner, it constitutes an abuse of discretion. *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979); *Cook v. Stenslie*, 251 N.W.2d 393 (N.D.1977). We also stated that if the judge could have properly decided a question either way, no abuse of discretion occurred in deciding in one way as opposed to the other, *Wrangham v. Tebelius*, 231 N.W.2d 753 (N.D.1975).

In this instance, the judge gave the following reasons for the closure:

" . . . in the conduct of a preliminary examination the Court is authorized to receive and consider evidence, including hearsay, which may otherwise be inadmissible at the time of trial.

. . . John J. Huber is charged with having committed five (5) Class AA felony offenses, which are alleged to have caused the death of each of four (4) local residents . . . . the evidence to be offered at the time of preliminary examination . . . will necessarily include the actions of the defendant prior to, during, and subsequent to the death of each of said individuals, as well as evidence relative to the time, place, cause and circumstances of each of said deaths. To permit such evidence to come within the general knowledge of a prospective juror is highly prejudicial to the defendant and denies the defendant his right to a fair trial by an impartial jury."

██ The judge also considered the alternatives available, such as change of venue, voir dire, preemptory challenges, sequestration of jury, admonitions, and other similar type procedures. The judge concluded that the closure was the proper thing to do under these circumstances and, accordingly, issued the order closing the preliminary examination to all except those functionaries stated in § 29–07–14. The judge did not recite or disclose the hearsay prejudicial evidence which would be introduced. Had he done that he would have defeated the very purpose of the closure order. We can-

not help but note that a fair trial is not a mere idle constitutional recitation. The United States Supreme Court has reversed a conviction because jurors had seen newspaper accounts (evidence) prejudicial to the defendant which would have been inadmissible at the trial. *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). Convictions were also reversed in California because the judge failed to close the preliminary hearing. *People v. Elliot,* 54 Cal.2d 498, 6 Cal.Rptr. 753, 354 P.2d 225 (1960); *People v. Prizant,* 186 Cal.2d 542, 9 Cal.Rptr. 282 (1960). The California cases involved mandatory closing.

After considering the stated reasons for the closure order and the applicable principles of law mentioned earlier in this opinion, we conclude that Judge Jorgensen did not abuse his discretion in ordering that the preliminary hearing be closed to the press. Accordingly, the stay is vacated and the petition for a supervisory writ is denied. This being a matter of first impression in this court and of vital concern to the public, no costs are to be assessed against either party and each will bear its own costs.

ERICKSTAD, C.J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the opinion that Justice Sand has authored for the majority. There are no constitutional rights of the news media involved and Judge Jorgensen did not commit an "abuse of discretion" as we have defined that term. *Maier v. Holzer,* 123 N.W.2d 29, 32 (N.D.1963). I would add the following two comments:

1. To the extent that *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505 (N.D.1980) holds that Article I, Section 22 of the North Dakota Constitution (now Article I, Section 9) requires that all proceedings in court be "open" (even a state's attorney's inquiry under § 11–16–15, NDCC), it is overruled.

2. When jurisdiction is returned, permitting Judge Jorgensen to proceed, he ought to reschedule the preliminary hearing as an "open" hearing in the interest of justice and good order, leaving the question of prejudicial disclosures in the lap of the prosecutor and the question of waiving the hearing in the lap of defense counsel, where they belong.