MINOT DAILY NEWS; KMOT–TV; KX Television Network; The Associated Press; and the North Dakota Newspaper Association, Petitioners,

v.

The Honorable Gary HOLUM, Judge of County Court, Ward County, North Dakota; Kevin Austin, Defendant; Calvin Newnam, Defendant; and Tom Slorby, State's Attorney, Ward County, North Dakota, Respondents.

Civ. No. 11125.

Supreme Court of North Dakota.

Jan. 22, 1986.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for petitioners; argued by Jack McDonald, Jr.

Teevens, Johnson, Montgomery, Minot, for Kevin Austin; argued by Bruce Montgomery.

Kenner Law Firm, Minot, for Calvin Newnam; argued by Carl O. Flagstad.

Appearance by Tom P. Slorby, State's Attorney, Minot.

LEVINE, Justice.

The petitioners, Minot Daily News, et al., petitioned this Court for a supervisory writ directing the Ward County Court Judge to vacate his order closing to the public the preliminary examination in a criminal case. We stayed the preliminary examination in order to consider this petition.

Kevin Austin and Calvin Newnam were each charged with murder, robbery, and felonious restraint. Pursuant to North Dakota Century Code § 29–07–14 [1] Austin and Newnam moved for the trial court to close their preliminary examination to the public on the grounds set forth in *Dickinson Newspapers, Inc. v. Jorgensen*, 338 N.W.2d 72 (N.D.1983). The State did not join or oppose this motion.

At the hearing on their motion Austin and Newnam contended that prejudicial evidence which would be inadmissible at trial would be presented at the preliminary examination.[2] The State stipulated that it intended to offer such evidence at the preliminary examination. Counsel for the petitioners was present at the hearing and although the trial court did not allow him oral argument it did consider petitioners' brief in rendering its decision.

The trial court found that prejudicial evidence inadmissible at Austin and Newnam's trial would be offered at the prelimi-

---

1. NDCC § 29–07–14 reads:

   The magistrate holding a preliminary hearing, upon the request of the defendant, may exclude from the examination every person except his clerk, the prosecutor and his counsel, the attorney general of the state, the state's attorney of the county, the defendant and his counsel, and such other person as he may designate, and the officer having the defendant in custody, but such exclusion, and the extent thereof, shall be within the discretion of the court.

2. Pursuant to North Dakota Rule of Criminal Procedure 5.1(a) the magistrate conducting a preliminary examination "may receive evidence that would be inadmissible at the trial."

nary examination, thus raising the substantial likelihood that public witness of this evidence would interfere with their right to a fair trial and impartial jury. Based on these findings the trial court closed the entire preliminary examination to the public and the petitioners sought a supervisory writ.

■ The exercise of our supervisory jurisdiction is discretionary, rare, and done only to rectify errors or prevent injustice when no adequate alternative remedies exist. *Heartview Foundation v. Glaser,* 361 N.W.2d 232 (N.D.1985). In this case we invoke our supervisory jurisdiction because this is a developing area of the law and the petitioners have no remedy other than to seek a supervisory writ.

In *Dickinson Newspapers* we held that if the magistrate finds that evidence inadmissible at trial on the issue of guilt or innocence will be admissible at the preliminary examination and there is a substantial likelihood that such evidence will interfere with the defendant's right to a fair trial and impartial jury, then there may be a departure from "the policy of openness in judicial proceedings." 338 N.W.2d at 79.

3. Various important societal interests are advanced by open court proceedings:

First, public access to criminal proceedings promotes informal discussion of governmental affairs by providing the public with a more complete understanding of the judicial system. This public access, and the knowledge gained thereby, serve an important "educative" interest. Second, public access to criminal proceedings gives the assurance that the proceedings were conducted fairly to all concerned and promotes the public perception of fairness. Public confidence in and respect for the judicial system can be achieved only by permitting full public view of the proceedings. Third, public access to criminal proceedings has a significant community therapeutic value because it provides an outlet for community concern, hostility, and emotion. Fourth, public access to criminal proceedings serves as a check on corrupt practices by exposing the judicial process to public scrutiny, thus discouraging decisions based on secret bias or partiality. Fifth, public access to criminal proceedings enhances the performance of all involved. Finally, public access to criminal proceedings discourages perjury.

We also concluded that the media could not intervene as a party in the preliminary examination proceedings below. The application of these principles needs further refinement.

■ Our policy of openness in judicial proceedings may at times conflict with a defendant's right to a fair trial.[3] Such a situation may arise where a motion is made to close a preliminary examination pursuant to § 29–07–14 and when it does the trial court must seek to best accommodate these conflicting interests.

■ In exercising its discretion under § 29–07–14 a trial court should close a preliminary examination only upon a showing that evidence inadmissible at trial will be offered at the preliminary examination and as a result there is a substantial likelihood of interference with the defendant's right to a fair trial. Additionally, a preliminary examination should not be closed unless the trial court finds there are no reasonable alternatives to complete closure.

■ In order to guide the trial courts we set out the proper procedure to be followed in their consideration of motions to close preliminary examinations:

*United States v. Criden,* 675 F.2d 550, 556 (3 Cir.1982) quoting the plurality opinion and Justice Brennan's concurring opinion in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). *See also State v. Teigen,* 289 N.W.2d 242, 245 (N.D.1980).
However, there are concerns militating against public preliminary examinations:
The evidence at the preliminary examination may be one-sided and misleading because the testimony is often that of the State alone—the defense remaining silent if it appears that probable cause has been established. Many non-lawyers may not be aware of the preliminary examination's function, which is not a trial, raising the danger that they may ascribe to the one-sided preliminary examination the legitimacy and credibility of a trial. In addition, factual, relevant reporting, no less than inflammatory publicity, may threaten a defendant's right to a fair trial by producing a jury pool within which a defendant's guilt has already been ascribed.
*San Jose Mercury-News v. Municipal Court,* 30 Cal.3d 498, 179 Cal.Rptr. 772, 638 P.2d 655 (Cal. 1982).

(1) The trial court is to review the evidence independently and, if necessary to protect the defendant's right to a fair trial, *in camera*, with counsel present and on the record. It is not enough for the trial court to order closure based upon the bare assertions of counsel that prejudicial evidence inadmissible at trial will be introduced at the preliminary examination. The trial court abdicates its independent judicial function by simply accepting such statements by the defendant, the State, or both. In evaluating a motion for closure the trial court should assess the nature and form of the anticipated evidence and the character of the adverse publicity that may be generated from an open proceeding disclosing such evidence.

(2) The trial court must consider alternatives to closure. The record does not reflect that this was adequately done in this case. Possible alternatives to closure include, but are not limited to: partial closure; exhausting and searching voir dire; additional peremptory challenges; continuance of the trial to allow public attention to subside; severance; and using emphatic and clear jury instructions on the duty to decide cases only on evidence presented in open court. *See United States v. Criden*, 675 F.2d 550 (3 Cir.1982); *State v. Shipley*, 497 A.2d 1052 (Del.Super.Ct.1985); *State v. Williams*, 93 N.J. 39, 459 A.2d 641 (N.J. 1983). The paramount concern is that closure be tailored to the circumstances of the perceived risk to a fair trial.

(3) If the trial court determines that there exists a substantial likelihood of prejudice to the defendant's right to a fair trial it may order closure only insofar as is necessary to protect that right. The denial of access must be narrowly tailored so that the public is excluded only from that portion of the preliminary examination that jeopardizes a fair trial. *Cf., Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (closure of entire suppression hearing too broad); *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (closure of all but three days of six weeks of voir dire too broad). Also, the transcript of any portion of the proceedings which has been closed should be made available to the public at the earliest time consistent with preserving the interests which required closure.

(4) The trial court must make findings adequate to support closure. This requires the trial court to reveal, without prejudicing the interests requiring closure, the facts and legal principles supporting its decision and encompasses the duty to explain its reasons for rejecting alternatives to complete closure. In this case the trial court failed to do so. Articulation of such findings and conclusions provides the rationale for the trial court's decision and is essential for intelligent judicial review.

(5) As far as the public's (which includes the media) right to object, we need not decide if the right of access is constitutionally guaranteed by the First Amendment to the United States Constitution,[4] [*Bismarck Public Schools v. Walker*, 370 N.W.2d 565 (N.D.1985) (we refrain from deciding constitutional issues where appropriate alternative grounds to resolve the issue exist) ], because we hold as a matter of strong judicial policy that the public is entitled to access to preliminary examinations or to reasonable notice and an opportunity to be heard on motions to close preliminary examinations.

Notice to the public may be afforded by placing motions for closure on the court docket, which is open to the public. Article XI, § 6, N.D.Const.; NDCC § 44–04–18. Alternatively, the trial court may notify a previously designated person or organization of the filing of motions for closure and that party then may provide notice to other representatives of the public and media.

---

4. This issue may soon be decided. The United States Supreme Court has granted certiorari in a case in which the California Supreme Court reaffirmed its earlier decision holding no public right of access to preliminary hearings under the First Amendment. *Press-Enterprise Company v. Superior Court of California for the County of Riverside*, —— U.S. ——, 106 S.Ct. 224, 88 L.Ed.2d 223 (1985).

We leave it to the good judgment of the trial court to allow reasonable time for both those requesting and opposing closure to prepare for the hearing within the constraints of the defendant's right to a speedy trial. The opportunity to be heard must consist at least of the opportunity to submit written briefs and, if requested by either side, to present oral argument.

▮ Having set out the procedure to be followed with motions to close preliminary examinations, we vacate our stay, direct the trial court to vacate its closure order and remand this case with directions that the trial court take further action consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.