**UNITED STATES of America,
Plaintiff-(Appellee),**

v.

**Kenneth Larry WILLIAMS, Defendant-
(Appellant).**

**No. 71-2317.**

United States Court of Appeals,
Ninth Circuit.

Feb. 8, 1972.

Rehearing Denied March 27, 1972.

Philip N. Andreen (argued), San Diego, Cal., for defendant-appellant.

Brian E. Michaels, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Stephen G. Nelson, Acting Chief, Crim. Div., San Diego, Cal., for plaintiff-appellee.

Before BROWNING and WRIGHT, Circuit Judges, and CRARY, District Judge.*

CRARY, District Judge:

The appellant, Kenneth Larry Williams, and a co-defendant, Clifton Hudspeth, were charged in a one-count Indictment with violation of Title 18, United States Code, Section 2113(a), bank robbery, on or about July 2, 1970. The jury returned a verdict of guilty as to Williams and not guilty as to Hudspeth.

The Government called three witnesses, each of whom positively identified the defendant Williams.

Angelo Cutaia, the operator of a gas station across the street from the bank, identified the appellant Williams as the man he saw run from the bank immediately after the robbery and enter a car parked in the alley behind his station which he described as a light blue or green Ford Motor Company automobile with round tail lights as those on a Thunderbird or Falcon. He testified the appellant passed within ten feet of him and he observed the appellant for about fifteen seconds. Bank tellers Mrs. Sylvia S. Johnson, who gave the appellant the money he demanded, and Miss Anne M. Lindberg, whose name was Mrs. Kelley at the time of the robbery, also positively identified appellant Williams as the person who robbed the bank. Both were eyewitnesses and each had an excellent opportunity to observe the appellant in the bank at the time of the robbery. There was also in evidence a bank camera photograph of the appellant Williams leaving the bank.

The defendants Williams and Hudspeth presented separate alibi defenses. Williams and his witnesses testified that he was in Long Beach, California, at the time of the robbery. The defendant Hudspeth did not testify but there was testimony that he was with Mr. Robert Louis Franklin and William T. Davis, smoking marijuana at the time of the robbery.

Counsel for the appellant alleges numerous errors, including rulings by the Court relative to the admission of evidence, as to various in trial motions, and jury instructions, errors by the prosecutor in argument, and insufficiency of the record on appeal. Several of the alleged errors require discussion.

## GOVERNMENT IMPEACHMENT OF ITS WITNESS, MR. FRANKLIN

It is urged by the appellant that the Court erred in permitting the Government to impeach its own witness, Robert Louis Franklin. Franklin was called by the Government as a rebuttal witness to Hudspeth's alibi witness Davis, who testified that he, Hudspeth, and Franklin were together smoking marijuana during the time of the bank robbery.

Franklin's testimony was also sought by the Government to rebut the testimony of the Appellant Williams who stated he did not own or have use of a green Ford Thunderbird as of the date of the robbery. Although Franklin had made a statement to the FBI as to facts relating to the robbery, he stated, when called to the stand, that he would not testify as to any facts concerning the bank robbery, whereupon a hearing was held outside the presence of the jury and Franklin refused to testify to any of the facts asked for by the Government other than the fact he had a conversation with Hudspeth on July 2nd.

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

The Court then appointed counsel to represent Mr. Franklin and to advise him as to his Fifth Amendment rights. Thereafter Mr. Franklin refused to answer questions on the grounds the answers might incriminate him and the Government then granted him immunity.

Mr. Brockett, Franklin's appointed counsel, again conferred with him and thereafter stated to the Court that Franklin " * * * intended to answer at least some of the questions and possibly all of them." Mr. Franklin confirmed his counsel's statement as to his intentions and was then called to the stand to testify. He did not testify in accordance with his prior statements to FBI Agent Vardell and defense counsel objected to the Government's impeaching questions.

Government counsel advised the Court that he was surprised by Franklin's testimony, particularly after he was granted immunity and had confirmed the statement of his attorney that he would answer some of the questions and possibly all of them.

After full consideration of the problem, the Court allowed Government counsel to ask the questions which included inquiry as to whether Franklin had told Agent Vardell on August 31 and September 9, 1970, that the appellant Williams owned or had use of a green Thunderbird, to which Franklin answered "No". He also denied telling anyone that he was not with Hudspeth during the afternoon of July 2, 1970.

Agent Vardell was allowed to testify, by way of impeachment, that Franklin had, on August 31 and September 9, 1970, told him that Williams (known to him as "Megie") had told him, he, Williams, " * * * owned or had use of a 1962 green Ford Thunderbird automobile." Agent Vardell also testified that Franklin, on August 26, 1970, had told him that Hudspeth was not with him, Franklin, during the afternoon of July 2, 1970.

Considering all of the facts and circumstances and the wide discretion vested in the trial Court in determining the right to impeach one's own witness on the grounds of surprise, this Court concludes that the trial Court did not abuse its discretion in allowing the Government to impeach its witness, Franklin, as outlined above. Nutter v. United States, 412 F.2d 178, 183 (9 C.A. 1969).

This Court in Bieber v. United States, 276 F.2d 709, 712–713 (9 C.A. 1960), said:

"If the Court is satisfied that the 'surprise' exists, either from the statement of counsel or otherwise, that is all that is required to permit the examination of the witness as to his prior contradictory statement."

In United States v. Graham, 102 F.2d 436, 442 (2 C.A. 1939), a witness had told the Assistant District Attorney before being called to the stand,

" * * * that he had testified falsely before and would not do so again."

The Court concluded that where the witness was

" * * * placed where he had to tell the truth or be subject to the rigors of the law respecting perjury, to persist in his refusal to testify substantially as he had before may well have surprised the examiner. It was one thing to threaten not to testify and quite another to carry out the threat when actually put to the test. And so we think the court was well justified in accepting the assurance of surprise and permitting the examination to run its course * * * "

The initial surprise as to Franklin's testimony, after he was granted immunity, as to Hudspeth's alibi which concerned Hudspeth only, would not, in the circumstances, necessarily preclude impeaching questions to Franklin relating to Williams' use of the Ford Thunderbird because Franklin's testimony as to Hudspeth could have been surprising but he might well have thereafter testified as expected as to what he was told by Williams.

The defense made no motion to strike, or for other relief, from the alleged er-

roneous questions after Franklin answered them in favor of appellant Williams. Williams' counsel could have concluded this was wise from a tactical standpoint because Franklin's testimony supported Williams positive denial on both cross-examination and redirect, of having use of a Ford Thunderbird.

Neither did defense counsel request that the Court instruct the jury that the impeaching testimony of Agent Vardell as to Franklin might not be considered as substantive evidence but only for the, purpose of impeaching Franklin.

A similar situation arose in United States v. Dunmore, 446 F.2d 1214 (8 C. A.1971). In Footnote 5, p. 1221, of the opinion, the Court said:

"The court gave no instruction to the jury that this statement was to be used for impeachment only, and was not substantive evidence. See, Goings v. United States, 377 F.2d 753 (8th Cir. 1967). No such instruction was requested, however, and in the absence of a request, this Court may not consider this error unless it constituted plain error. Rule 30, Fed.R.Crim. Proc."

Assuming the Court abused its discretion and committed error in allowing the Government to impeach its witness Franklin as to his testimony concerning defendant Williams, we conclude the error was harmless because there is overwhelming evidence of guilt and any such error did not affect substantial rights of the appellant.

### CROSS–EXAMINATION OF APPELLANT WILLIAMS

Mr. Williams admitted on cross-examination that he, co-defendant Hudspeth and Mr. Franklin, were acquainted as of July 2, 1970. He denied that he was with Hudspeth on the morning of July 2nd and denied that Hudspeth complained to him or that he told Hudspeth that if he would accompany him to the bank he would make things right.

Appellant's counsel observed, at the bench, that if the Government was not going to introduce evidence to support the tenor of counsel's questions that he thought they were improper. Government counsel indicated that he would offer such evidence.

The Government had a report of FBI Agent Vardell covering statements of Mr. Franklin wherein he said that Hudspeth told him that Williams had told him (Hudspeth) that if he would accompany him (Williams) to the bank he (Hudspeth) could get his money back.

The reference to "get his money back," Franklin said, concerned a matter in which Hudspeth claimed associates of Williams had cheated him in a purchase of marijuana.

Governmental counsel, of course, could not ask Franklin, when called on rebuttal, as to what Hudspeth told him that Williams said about going to the bank, but counsel did question Franklin as to the statements of Hudspeth and Williams to Franklin as noted above.

Defense counsel did not move to strike the questions to Williams involving the Ford Thunderbird or ask that the jury be instructed to disregard them or seek other relief from the now alleged error.

This case is to be distinguished from Thomas v. United States, 363 F.2d 159 (9 C.A.1966), where the Court held that it was not necessary for defense counsel to make a second objection to an impeaching question where the Government had indicated it would produce testimony in support of the fact sought to be elicited by the question. In that case the Court said:

"In a close case such as this, depending partly at least, if not chiefly, on circumstantial evidence—and with no proof of actual purchase or personal possession in Thomas * * *, we cannot say this procedural error was not prejudicial to the appellant's rights." [Page 165.]

The Court does not conclude the case at bench may properly be described as a "close case."

The cross-examination of Williams appears to have presented the Govern-

ment's theory of the case. The questions were asked in good faith, based on the statements to the FBI of the witness Franklin and not directed to unrelated prior acts of appellant.

## SUFFICIENCY OF THE REPORTER'S TRANSCRIPT

■ Appellant urges that the reporter's transcript does not include court conferences with counsel and the jury relating to two questions sent to the Court by the jury during its deliberations.

At the Court's request, the record on appeal was augmented by that portion of the reporter's transcript, mistakenly omitted, concerning the proceedings had during the discussions in open court, in the presence of the appellant, his co-defendant and all counsel, of the questions submitted by the jury.

It was stipulated by counsel that the "payment book for Zale's jewelers", asked for by the jury, be marked as an exhibit and sent to the jury for its consideration. All concerned approved the reading of the testimony requested by the jury in its second question. Obviously no error resulted.

## JURY INSTRUCTIONS

■■ The "alibi" instruction offered by appellant was not read by the Court in exactly the same form as submitted. However, since no objections were made to the instructions as given or additional instructions requested, when the Court conferred with counsel in this regard following instruction of the jury, this Court concludes the objections were waived. Furthermore, the Court's instructions, when read as a whole, were not erroneous. Rivers v. Angf. A/B Tirfing, 450 F.2d 12, 14–15 (5 C.A. Oct., 1971).

## APPELLANT DID NOT ATTEND CONFERENCES AT THE BENCH

■ Appellant contends that his right to attend all proceedings during the trial was violated by his absence at the Judge's conferences with the attorneys at the bench.

In United States v. Alper, 449 F.2d 1223 (3 C.A. Nov., 1971), the defendants were not present at conferences in chambers between the Court and counsel concerning inquiries from the jury. Notices of the conferences had been sent to counsel but not to the defendants. The Court observed:

"Here, clearly, is an instance in which trial counsel must be assumed to have implied authority to receive notice of a conference respecting inquiries from the jury. The court was entitled to rely upon counsels' performance of their agency duties and to assume that appellants' absence was voluntary." [P. 1232.]

After citing and discussing pertinent authorities, the Court said:

"In the circumstances here presented the court was not in error in relying on the authority of defense counsel to act for their client." [P. 1232.]

In holding that if there was error it was harmless beyond a reasonable doubt, the Court said:

"Neither communication to the jury is claimed to be erroneous." [P. 1232.]

The principle announced in the Alper case, supra, applies to bench conferences, and the Court, in the circumstances, was entitled to rely on counsel's performance of his agency duties and assume appellant's absence from the bench was voluntary. He was in court during such conferences.

■ The assertion of the appellant that he was not adequately represented by counsel is not well taken. As stated by the Court in United States v. Valenzuela-Mendoza, 452 F.2d 773 (9 C.A. Dec. 22, 1971):

"By hindsight, it may appear that the trial attorney committed errors in judgment. Such errors, however, even if they would point to a lack of professional cunning, do not vitiate the

trial, unless on the whole the attorney's performance was such as to amount to no representation and to reduce the trial to a mockery."

Appellant was not entitled to an errorless trial and his representation by counsel in the trial, which consumed a period of eight days, was far from a farce or a mockery.

Although we assume there was some error involved in the trial, when taken in the context of the trial as a whole it did not constitute reversible error.

As stated by the Court of Appeals, 5th Circuit, in United States v. Roland, 449 F.2d 1281, 1282 (1971):

"An error that might be prejudicial in a close case does not require reversal when evidence of the defendant's guilt is strong. United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795, 803, cert. denied 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331; United States v. Panczko, 7 Cir. 1970, 429 F.2d 683, 688."

The Court concludes that this is not a case in which the effect of cumulative error impels the conclusion that the appellant was deprived of a fair trial. United States v. Lipscomb, 435 F.2d 795, 803 (5 C.A.1970).

The Court of Appeals must look at the evidence and all reasonable inferences therefrom in light most favorable to the Government.

Weighing all of the evidence in this case, it is not reasonably probable that the appellant would receive a more favorable result on a retrial.

The evidence of guilt is so strong that the error, if any, is harmless and did not affect the substantial rights of the accused. United States v. Howard, 452 F.2d 1200 (9 C.A. Dec. 22, 1971).

Other errors urged by the appellant, we likewise find to be without merit in the circumstances.

The cause is submitted for decision, and the judgment is affirmed.