The STATE of North Dakota,
Plaintiff and Appellee,

v.

Ernest KLEM, Defendant and
Appellant.

Cr. No. 880148.

Supreme Court of North Dakota.

March 22, 1989.

Jay Brovold, State's Atty., Medora, and Richard R. Tessier, Asst. Atty. Gen., Atty. General's Office, Bismarck, for plaintiff and appellee; argued by Jay Brovold. Appearance by Richard R. Tessier.

Thomas M. Tuntland (argued), Mandan, for defendant and appellant.

LEVINE, Justice.

Ernest Klem (Klem) appeals from a jury verdict finding him guilty of two counts[1] of gross sexual imposition in violation of § 12.1–20–03, N.D.C.C., from the judgment of conviction, and from an order denying his motion for a new trial. We reverse and remand for a new trial.

The victim of the offenses was Klem's adopted son. A general recitation of facts is unnecessary. Of several issues Klem has raised on appeal, we need consider only one:

"DID THE TRIAL COURT ERR WHEN IT EXCLUDED THE PUBLIC FROM THE COURTROOM DURING THE TESTIMONY OF THE ALLEGED VICTIM OF A SEXUAL CRIME WITHOUT MAKING ANY FINDINGS ADEQUATE TO SUPPORT CLOSURE AND WITHOUT ANY EVIDENCE TO SUPPORT CLOSURE HAVING BEEN ADVANCED?"

Just before the child victim testified, the State asked that the courtroom be cleared. The following colloquy occurred between the court and counsel at the bench:

"MR. TESSIER: Because this is of a sensitive nature may I ask that the Courtroom be cleared of all extraneous personnel? It may be very distracting and very embarrassing for him in front of all these people and the people in the Courtroom may inhibit the testimony.

"THE COURT: Any objections?

"[Klem's attorney]:[2] As the Court has stated, it's my client's case and I would like to discuss that with him.

"THE COURT: Please do.

"[Klem's attorney]: Excuse me, Your Honor. I'm sorry, he does object. I don't have any grounds to object however.

"THE COURT: Very well. I think I will clear the Courtroom. Let's go back and put it on the record."

The court then cleared the courtroom of all persons except court personnel, parties, attorneys, jurors, and a "representative of the public media."

Klem contends that the trial court's exclusion of the public during the child's testimony deprived him of his right to a public trial under the sixth amendment to the United States Constitution and Art. I, § 12, N.D. Const. The State contends that Klem did not preserve this issue for review, arguing that his " 'objection' to the partial closure of the Courtroom was not a proper,

---

1. One count was for engaging in a sexual act with a person less than fifteen years old; the other count was for engaging in sexual contact with a person less than fifteen years old.

2. Klem was represented by different counsel on appeal than at trial.

valid objection" because "for there to be a valid objection giving rise to error, there must be grounds asserted therefor." (*See* Explanatory Note, Rule 51, N.D.R.Crim.P.). We conclude that any articulated objection for the purpose of resisting an untimely, unsupported motion to close a trial to the public fulfills the evidentiary rule that the State argues is applicable. We also conclude that Klem was improperly deprived of his right to a public trial.

 Historically, we have exhibited a strong preference for public trials and our state and federal constitutions presume open trials as the norm. *See, e.g., Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979); *Minot Daily News v. Holum,* 380 N.W.2d 347 (N.D. 1986); *Dickinson Newspapers, Inc. v. Jorgensen,* 338 N.W.2d 72 (N.D.1983). The public-trial guarantee was created for the benefit of the accused. *Waller v. Georgia, supra; State v. Nyhus,* 19 N.D. 326, 124 N.W. 71 (1909). A public trial restrains possible abuses of judicial power, encourages participants to perform their duties conscientiously, brings forth witnesses who might be unknown to the parties and might not otherwise testify, and tends to assure testimonial trustworthiness. *Douglas v. Wainwright,* 739 F.2d 531 (11th Cir.1984); 3 W. LaFave & J. Israel, *Criminal Procedure* § 23.1(a) (1984). While the right to a public trial is not absolute and "may give way in certain cases to other rights or interests ... [s]uch circumstances will be rare, however, and the balance of interests must be struck with special care." *Waller v. Georgia, supra,* 467 U.S. at 45, 104 S.Ct. at 2215, 81 L.Ed.2d at 38. Thus, a party moving to close a criminal proceeding must advance an overriding interest that is likely to be prejudiced. *Waller v. Georgia, supra.*

A movant must make a prima facie showing that he is entitled to the relief his motion seeks. *See Northwestern Equip-* *ment, Inc. v. Badinger,* 403 N.W.2d 8 (N.D.1987). In *Badinger* a movant for summary judgment did not make a threshold showing that it was entitled to judgment as a matter of law, with the result that the opponent was not required to respond to the motion with affidavits. Similarly, the burden is on a movant for closure of a trial to the public to make a threshold showing that there is an overriding interest that can be protected only by closure. The weight of that burden is substantial. *Douglas v. Wainwright,* 714 F.2d 1532, 1539 (11th Cir.1983), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985) ("one who seeks to justify closure of a criminal trial carries a heavy burden"). The "bare assertions of counsel" (*Minot Daily News v. Holum, supra,* 380 N.W.2d at 350) are insufficient to constitute a threshold showing justifying closure.

 Further, a motion to close a trial to the public must ordinarily be made before trial. *See* Rule 17.1, N.D.R.Crim.P. The reason is obvious—to avoid unfair surprise and to give the trial court the benefit of the parties' research and arguments.

 In this case, the State did not make a pretrial motion. It framed its midtrial motion in only the most general terms and it failed to provide the trial court with specific facts sufficient to justify closure. Without warning, and as the child was seated in the witness stand ready to testify, the State requested closure of the trial during the child's testimony. The impact of this last-minute "motion" was significant. This was the second trial.[3] The entire first trial was open to the public. Therefore, the surprise to the defendant from the State's untimely and unsupported motion to close the trial cannot be overestimated.

Under these circumstances, namely, an untimely, unsupported motion to close, we hold that Klem was not required to respond with any greater specificity than he did, and that his objection was sufficient to register his resistance to the motion.

---

**3.** The first trial resulted in a hung jury.

In *Waller v. Georgia, supra*, the United States Supreme Court concluded that a defendant's express sixth amendment right to a public trial enjoys at least equal footing with the implied first amendment right of the press and public. Sensitive to the fact that *Waller* involved closure of only a suppression hearing and not a trial, the *Waller* court reasoned that, because suppression hearings "often are as important as the trial itself," they too must be open unless the tests for closure set out in *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), and its predecessors are met. *Waller, supra*, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 39. The applicable rules in *Press–Enterprise* are:

"The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." 464 U.S. at 510, 104 S.Ct. at 824, 78 L.Ed.2d at 638.

■ There is thus an absolute requirement that before the trial court may exclude the public, it must articulate its reasons on the record and those reasons must be expressed in findings that enable a reviewing court to exercise its function. The court summarized the requirements in *Waller, supra*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39:

"[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."

The requirement of findings by the trial court is not merely to give the reviewing court something to review, but more importantly, to evidence that the trial court has in fact considered and weighed the compet-

ing interest of an accused to a public trial with the interest of a child sexual abuse victim to a stress-controlled environment. A hearing and findings encourage the careful consideration warranted by a motion to close a trial.

■ In *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), the United States Supreme Court invalidated a state statute requiring exclusion of press and public during the testimony of minor sexual abuse victims. *Globe* recognizes a compelling interest in safeguarding the physical and psychological well-being of minor victims of sex crimes and does not prohibit closure. However, *Globe* does require that a trial court make a particularized determination that a child witness is in need of protection before closing a trial to protect the child. This the trial court did not do. There was no hearing, no weighing of competing interests, and no findings to support closure. While the trial court's allowance of the presence of a media representative may have satisfied the public's first amendment right, it did not address the defendant's sixth amendment right to a public trial.

Where a defendant has objected to the exclusion of the public, compliance with the closure requirements enunciated in *Waller v. Georgia, supra*, is necessary and non-compliance is reversible error. *See, e.g., State v. Hightower*, 376 N.W.2d 648 (Iowa App.1985), where the trial court granted the prosecutor's request that spectators be excluded while a ten-year-old child testified. The appellate court reversed and remanded for a new trial because "the prosecutor did not articulate for the record an 'overriding interest' that would likely be prejudiced, and the trial court failed to make adequate findings to support the closure." *Id.*, at 650. *See also People v. Holveck*, 171 Ill. App.3d 38, 121 Ill.Dec. 25, 524 N.E.2d 1073 (1988), where the trial court excluded the public from the trial during the testimony of 6–year–old sexual assault victims. The appellate court reversed and remanded for a new trial, stating at 121 Ill.Dec. 35, 524 N.E.2d 1083:

"The sole reason cited by the court for the closure was the 'unnerving effect' on

the children if the courtroom were crowded and wanting to make the unpleasant experience of testifying as pleasant as possible for them. The record thus fails to establish that the trial court engaged in the careful balancing of interests and the individualized evaluation of factors required to override the defendant's qualified Sixth Amendment right to a public trial. Accordingly we find that the court erred in closing portions of defendant's trial to the general public."

■ The State has pointed out that the trial court suggested after trial that the ruling would have been the same had *Waller* been followed. In denying Klem's motion for a new trial, the trial court stated in part:

"The facts of the case were very clear and warranted closure of the trial during the testimony of the child witnesses....

\* \* \* \* \* \*

"In this case, had there been a hearing and findings of fact, there was an abundance of evidence to show how sensitive the testimony of the children was....

"That children may be intimidated by the presence of unknown adults about them is common knowledge and a well known fact, that children are reluctant to talk in the presence of adult strangers is commonly accepted [f]act, common knowledge, which the Court could exercise, but of which there was specific proof in this case, both during the preliminary hearing, during the first trial and through the testimony of Dr. Cook as to how reticent Landon, particularly, was on his initial examinations...."

An appellate court may not provide a post hoc rationale for why the trial court would have closed the trial had it held a hearing and made findings. The *Waller* court expressly invalidated such efforts by the Georgia Supreme Court:

"The post hoc assertion by the Georgia Supreme Court that the trial court balanced petitioners' right to a public hearing against the privacy rights of others cannot satisfy the deficiencies in the trial court's record. The assertion finds little or no support in the record, and is itself too broad to meet the Press–Enterprise standard." 467 U.S. at 49 n. 8, 104 S.Ct. at 2217 n. 8, 81 L.Ed.2d at 40 n. 8.

The trial court's post hoc rationalization is similarly unavailing here. While the child victim's testimony was of a sensitive nature, it is apparent that the trial court's post hoc rationale for why it would have closed the trial had it held a hearing is insufficient. Without an evidentiary hearing, the trial court's rationale "finds little or no support in the record" (*Waller, supra*). Without having weighed evidence as to such factors as the child victim's psychological maturity and understanding, his desires, and the interests of his parents and other relatives, the trial court's statements do not constitute the kind of "particularized determinations in individual cases" (*Globe Newspaper Co., supra,* 457 U.S. at 611 n. 27, 102 S.Ct. at 2622 n. 27, 73 L.Ed. 2d at 260 n. 27) required by *Waller, Press–Enterprise* and *Globe*.

■ *Waller* requires that a hearing be conducted and that findings be made before a trial is closed to the public. The trial court, therefore, erred in excluding the public, except for one media representative, from the courtroom during the child victim's testimony without first conducting a hearing and making findings in accordance with the *Waller* requirements. A defendant need not "prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." *Waller, supra,* 467 U.S. at 49, 104 S.Ct. at 2217, 81 L.Ed.2d at 40. Nor do we apply a harmless-error analysis to such errors, for " '[t]he harmless error rule is no way to gauge the great, though intangible, societal loss that flows' from closing courthouse doors." *Waller, supra,* 467 U.S. at 49 n. 9, 104 S.Ct. at 2217 n. 9, 81 L.Ed.2d at 40 n. 9, *quoting People v. Jones,* 47 N.Y.2d 409, 418 N.Y.S.2d 359, 364, 391 N.E.2d 1335, 1340 (1979).

■ Our conclusion that the trial court erred in closing the trial during the child victim's testimony without conducting a hearing and making findings requires us to

determine a remedy. The court in *Waller* granted only qualified relief by ordering a public suppression hearing, but no new trial unless a new "public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties" (*Waller, supra,* 467 U.S. at 50, 104 S.Ct. at 2217, 81 L.Ed.2d at 41). The theory underlying the qualified relief granted in *Waller* is that if the public suppression hearing ordered did not result in a change in the evidence to be admitted, a new trial would be a windfall because the defendant had already been tried and convicted on the evidence that would be admissible in a new trial. Here, however, the public was excluded from the trial, not a suppression hearing.[4] It is impossible to discern what effect the error had on the trial.[5] We therefore believe that the appropriate relief is a new trial.

If, on remand, the State again wishes to have the general public excluded during the victim's testimony, it may again seek closure. Before ordering closure, the trial court will be required to conduct a hearing and make findings in accordance with the *Waller* requirements. As in *Waller, supra,* 467 U.S. at 50, 104 S.Ct. at 2217, 81 L.Ed.2d at 41, the "decision should be made in light of conditions at the time of the new hearing, and only interests that still justify closure should be considered."

Reversed and remanded for a new trial.

MESCHKE, GIERKE and VANDE WALLE, JJ., concur.

ERICKSTAD, Chief Justice, dissenting.

Ernest Klem has appealed from a jury verdict finding him guilty of two counts[1]

of gross sexual imposition in violation of § 12.1–20–03, N.D.C.C., from the judgment of conviction, and from an order denying his motion for a new trial. I would reverse and remand for a hearing and findings as to whether or not members of the public, with exception of one representative of the media, may be properly excluded during the testimony of one witness pursuant to the standards set forth in *Waller v. Georgia,* 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31, 38 (1984). I would not grant a new trial unless that hearing required it.

The victim of the offenses was Klem's adopted son, Lyle (a pseudonym). The sufficiency of the evidence to sustain the verdict has not been challenged and a general recitation of facts is unnecessary. Klem has raised the following issues:

"A. DID THE TRIAL COURT ERR WHEN IT EXCLUDED THE PUBLIC FROM THE COURTROOM DURING THE TESTIMONY OF THE ALLEGED VICTIM OF A SEXUAL CRIME WITHOUT MAKING ANY FINDINGS ADEQUATE TO SUPPORT CLOSURE AND WITHOUT ANY EVIDENCE TO SUPPORT CLOSURE HAVING BEEN ADVANCED?

"B. DID THE TRIAL COURT ABUSE ITS DISCRETION IN REFUSING TO EXCUSE FOR CAUSE TWO JURORS WHO HAD BEEN EXPOSED TO PRETRIAL PUBLICITY REGARDING THE CASE AND WHO COULD NOT UNEQUIVOCALLY STATE THEY COULD BE IMPARTIAL JURORS IN THE CASE?

---

**4.** It is significant that this was a trial that was closed, as distinguished from a pretrial proceeding, as in *Waller*. Until recently, pretrial proceedings "were never characterized by the same degree of openness as were actual trials." *Gannett Co., Inc. v. DePasquale, supra,* 443 U.S. at 388, 99 S.Ct. at 2910, 61 L.Ed.2d at 626.

**5.** On appeal, Klem has argued that he "was denied even the presence of his friends and relatives." In denying Klem's motion for a new trial, the court stated that it "would readily have granted" a request for the presence of relatives, such as the child victim's grandparents. Without a hearing, there was no reasonable opportu-

nity for Klem to make such a request. The presence of the child victim's grandparents or other relatives could "provide moral support and comfort" [*Aaron v. Capps,* 507 F.2d 685, 688 (5th Cir.), *cert. denied,* 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed.2d 112 (1975)] as well as fulfill such objectives of a public trial as assuring testimonial trustworthiness.

**1.** One count was for engaging in a sexual act with a person less than fifteen years old; the other count was for engaging in sexual contact with a person less than fifteen years old.

"C. WHEN THERE WAS CONFLICTING EVIDENCE AS TO WHETHER THE PROMPT REPORTING REQUIREMENT OF SECTION 12.1–20–01(3) N.D.C.C. HAD BEEN MET, DID THE COURT ERR IN REFUSING TO SUBMIT THE FACTUAL ISSUE TO THE JURY FOR RESOLUTION?

"D. DID THE COURT ERR WHEN IT PERMITTED A WITNESS TO EXPRESS AN OPINION THAT A CHILD HAD NOT BEEN 'CONTAMINATED' WHEN SUCH AN OPINION, IN EFFECT, AMOUNTED TO AN EXPRESSION OF OPINION THAT THE CHILD WAS TELLING THE TRUTH?

"E. DID THE COURT ABUSE ITS DISCRETION IN EXCLUDING POLYGRAPH EVIDENCE THAT INDICATED THE DEFENDANT HAD NOT COMMITTED THE CRIME CHARGED?"

### A. Exclusion of public

Klem contends that the trial court's exclusion of the public during Lyle's testimony deprived him of his right to a public trial under the Sixth Amendment to the United States Constitution and Art. I, § 12, N.D. Const.

Just before Lyle testified, the State asked that the courtroom be cleared. The following colloquy occurred between the court and counsel at the bench:

"MR. TESSIER: Because this is of a sensitive nature may I ask that the Courtroom be cleared of all extraneous personnel? It may be very distracting and very embarrassing for him in front of all these people and the people in the Courtroom may inhibit the testimony.

"THE COURT: Any objections?

"[Klem's attorney]: [2] As the Court has stated, it's my client's case and I would like to discuss that with him.

"THE COURT: Please do.

"[Klem's attorney]: Excuse me, Your Honor. I'm sorry, he does object. I don't have any grounds to object however.

"THE COURT: Very well. I think I will clear the Courtroom. Let's go back and put it on the record."

The court then cleared the courtroom of all persons except court personnel, parties, attorneys, jurors, and a "representative of the public media." [3]

The United States Supreme Court has found that "the press and public have a qualified First Amendment right to attend a criminal trial. *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980)." *Waller v. Georgia*, 467 U.S. at 44–45, 104 S.Ct. at 2214, 81 L.Ed.2d at 37. In *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the Court extended that right not only to the trial as such but also to the *voir dire* proceeding in which the jury is selected. Although *Richmond, Globe*, and *Press–Enterprise* involved First Amendment challenges to closed proceedings, in *Waller*, the Court stated that "there can be little doubt that the explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Waller v. Georgia*, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38.

The Supreme Court has said that "[n]o right ranks higher than the right of the accused to a fair trial." *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. at 508, 104 S.Ct. at 823, 78 L.Ed.2d at 637. "The central aim of a criminal proceeding must be to try the accused fairly,

2. Klem was represented by different counsel on appeal than at trial.

3. The trial court had previously sequestered the witnesses who were going to testify. Thus, some people had been excluded from the courtroom before the State's request to clear the courtroom.

and '[o]ur cases have uniformly recognized the public-trial guarantee as one created for the benefit of the defendant.'" *Waller v. Georgia*, 467 U.S. at 46, 104 S.Ct. at 2215, 81 L.Ed.2d at 38.

In *Press–Enterprise*, the Court enunciated several factors supporting public trials:

"The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press–Enterprise Co. v. Superior Court of California*, 464 U.S. at 508, 104 S.Ct. at 823, 78 L.Ed.2d at 637.

Public trials, however, are not always mandated. In *Globe*, the Court stated:

"Although the right of access to criminal trials is of constitutional stature, it is not absolute. [cites omitted.] But the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where, as in the present case, the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. at 606–607, 102 S.Ct. at 2620, 73 L.Ed.2d at 257.

In *Globe*, the criminal defendant had been charged with the forcible rape and forced unnatural rape of three minor girls. The trial judge ordered the courtroom closed during several preliminary hearings and Globe moved that the court revoke the order. The trial court denied Globe's motions and ordered the exclusion of the press and general public from the courtroom during the trial. On appeal to the United States Supreme Court, the Court agreed with the State that safeguarding the physical and psychological well-being of a minor is a compelling interest.

"But as compelling as that interest is, it does not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." [Footnotes omitted.] *Globe*, 457 U.S. at 607–608, 102 S.Ct. at 2620–2621, 73 L.Ed.2d at 258.

In *Waller*, the United States Supreme Court held that "under the Sixth Amendment any closure of a suppression hearing over the objections of the accused must meet the tests set out in *Press–Enterprise* and its predecessors." *Waller v. Georgia, supra*, 467 U.S. at 47, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. Further,

"[u]nder *Press–Enterprise*, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. at 48, 104 S.Ct. at 2216, 81 L.Ed.2d at 39.

There are a number of differences between the circumstances in *Waller* and those of the instant case which diminish much of the precedential force of *Waller*. *Waller* involved police wiretaps that revealed a large lottery operation involving gambling on the volume of stocks and bonds traded on the New York Stock Exchange. Prior to trial, the petitioners and other defendants moved to suppress the wiretaps and evidence seized in searches. The State moved to close the suppression hearing, stating that "in order to validate the seizure of evidence derived from the

wiretaps the State would have to introduce evidence 'which [might] involve a reasonable expectation of privacy of persons other than' the defendants." *Waller v. Georgia*, 467 U.S. at 41, 104 S.Ct. at 2213, 81 L.Ed.2d at 35. "The intercepted conversations that were played included some persons who were not then on trial, but no one who had not been named in the indictment." *Waller v. Georgia*, 467 U.S. at 42, 104 S.Ct. at 2213, 81 L.Ed.2d at 36. The trial court in *Waller* ordered a complete closure, over defendant's objection, of the proceedings to all but witnesses, court personnel, parties and lawyers; in this case, a representative of the public media was allowed to remain in the courtroom. In *Waller*, the entire seven-day suppression hearing was closed, although less than 2½ hours were devoted to playing tapes of intercepted telephone conversations. In this case, the courtroom was closed for only part of one day during the testimony of only one witness. The hearing closed in *Waller* involved wiretap telephone conversations related to a lottery operation; the part of the trial closed in this case involved the testimony of an 11-year-old boy about sexual acts allegedly committed upon him by his adoptive father, the substance of which was introduced in open court through the testimony of other witnesses. An 11-year-old boy testifying about sexual acts allegedly committed upon him by his adoptive father presents a much more compelling case for protection than indicted adult participants in telephone conversations intercepted by wiretaps in a gambling investigation.

Furthermore, the Supreme Court in *Waller* specifically held that "any closure of a suppression hearing *over the objections of the accused* must meet the tests set out in *Press–Enterprise* and its predecessors." [Emphasis ours.] *Waller v. Georgia*, 467 U.S. at 47, 104 S.Ct. at 2216, 81 L.Ed.2d at 39. Here, Klem's only response to the prosecutor's closure request was his counsel's statement during the bench conference: "Excuse me, Your Honor. I'm sorry, he does object. I don't have any grounds to object however."

If a criminal defendant thinks a trial court is "about to deprive him of a federal constitutional right there is every reason for his following state procedure in making known his objection." *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594, 610 (1977). Our procedure for preserving a point on appeal is to object, based on proper grounds, to permit the trial court to correct its error, if any, or to enable the opposing party to correct an alleged defect. Explanatory Note, Rule 51, N.D.R.Crim.P. An objection "should be so specific that its meaning is clear." *Hultberg v. Hjelle*, 286 N.W.2d 448, 457 n. 4 (N.D.1979). An objection should give the opponent the basis of what is objectionable and bring the matter to the trial court's attention so that the court can intelligently rule on it. *State v. Helgeson*, 303 N.W.2d 342 (N.D.1981). *See also State v. Hepper*, 316 N.W.2d 338 (N.D.1982); *State v. Moore*, 286 N.W.2d 274 (N.D.1979). "It is not our function to seek out error, which the trial court was not given an opportunity to rectify, or to remake the record for review, or to allow second guesses on trial strategy." *Waletzko v. Herdegen*, 226 N.W.2d 648, 653 (N.D.1975).

While he did not specifically raise it as an issue, Klem has asserted that he:

> "was excluded from the very bench conference at which the prosecution alleges he waived his objection to exclusion of the public. He objected. He relied on his attorney to pass on the objection. Does he now forfeit that objection because of a secret proceeding held in his absence?"

Rule 43, N.D.R.Crim.P., generally provides that a defendant has a right to be present at every stage of his trial. We have said that a defendant in a criminal trial also has a constitutional right to be present at every stage of the proceedings against him. *State v. Iverson*, 187 N.W.2d 1 (N.D.1971) (holding that it was error, though harmless, to exclude the defendant from in-chamber conferences). *But cf. United States v. Williams*, 455 F.2d 361 (9th Cir.1972), where the defendant, who was in court during bench conferences, contended that his right to attend all pro-

ceedings was violated by his absence from the bench conference. The court held that the trial court "was entitled to rely on counsel's performance of his agency duties and assume appellant's absence from the bench was voluntary." *Id.* at 365.

Klem was in the courtroom when the bench conference in issue occurred. No evidence has been drawn to our attention showing that Klem was excluded from bench conferences. No evidence has been drawn to our attention showing that Klem requested that he be present at bench conferences. There has been no showing as to why Klem did not accompany his attorney to the bench for bench conferences. As the court said in *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed. 2d 126, 135 (1976):

"Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system."

Despite the differences between *Waller* and the instant case, despite the weakness of Klem's objection to the State's closure request, and notwithstanding the fact that I believe the evidence sufficient to sustain Klem's conviction and that the trial court did not abuse its discretion in denying Klem's motion for new trial in resolving the other issues raised in the motion, I think this case must be remanded for a hearing and findings in accordance with the procedure specified in *Waller v. Georgia, supra. Waller* requires that a hearing be conducted and that findings be made before a suppression hearing is closed to the public. We have recognized that the principles of law preserving the right of a fair trial also apply to preliminary hearings. *Dickinson Newspapers, Inc. v. Jorgensen*, 338 N.W.2d 72, 79 (N.D.1983); *see also*

*Minot Daily News v. Holum*, 380 N.W.2d 347 (N.D.1986). Having concluded that those principles apply to a preliminary hearing, it naturally follows that they apply to a trial. The trial court, therefore, erred in excluding the public, except for one media representative, from the courtroom during Lyle's testimony without first conducting a hearing and making findings in accordance with the *Waller* requirements.

As in *Waller*, the question that remains is what relief should be ordered to remedy the violation. I agree that a defendant need not "prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." *Waller v. Georgia*, 467 U.S. at 49, 104 S.Ct. at 2217, 81 L.Ed.2d at 40. I also agree with the *Waller* court that this view does not require a new trial. Rather, "the remedy should be appropriate to the violation." *Waller*, 467 U.S. at 50, 104 S.Ct. at 2217, 81 L.Ed.2d at 41.

In this case, in the hearing on Klem's motion for a new trial, the trial court considered the parties' arguments in light of the *Waller* requirements. In denying the motion for new trial, the trial court stated in part:

"The facts of the case were very clear and warranted closure of the trial during the testimony of the child witnesses.[4] [Footnote added.] It warranted complete closure even under the Constitution because of the sensitive nature of the case, the age of the witnesses, the fact there had already been a mistrial in the case, the tremendous amount of pressure on the child witnesses, the feeling of the child witnesses that they could not be trusted by adults and that the adult world was not only cruel, but unfair to children. That is indicated, for example, by the fact that the witness, [Earl, a pseudonym], literally cried out at one

---

**4.** Although the trial court refers to closure of the trial during the testimony of the child witnesses, a review of the record indicates that the courtroom was closed beginning with Lyle's testimony during the second day of trial. At the conclusion of Lyle's testimony that same day, the court recessed. The first witness to testify the next day of trial was Earl. The record does not indicate that the court remained closed during this testimony, or during the testimony of subsequent witnesses.

point tearfully that it was being made to appear that he was lying.

\* \* \* \* \* \*

"In this case, had there been a hearing and findings of fact, there was an abundance of evidence to show how sensitive the testimony of the children was. Certainly, there is very little evidence that can come to Court that is in the eyes of many human beings more sensitive and probably embarrassing or difficult to relate than that of a child who claims he has been sexually abused by his father. That fact speaks for itself, that it is a sensitive issue.

"That children may be intimidated by the presence of unknown adults about them is common knowledge and a well known fact, that children are reluctant to talk in the presence of adult strangers is commonly accepted [f]act, common knowledge, which the Court could exercise, but of which there was specific proof in this case, both during the preliminary hearing, during the first trial and through the testimony of Dr. Cook as to how reticent [Lyle], particularly, was on his initial examinations. He described that [Lyle] sat on the table and crawled into the position of a bird, I believe he said, initially and was reluctant to participate in any examination or conversation with the then stranger, Dr. Cook, until his techniques for examination opened him up a bit. The Court could have and would have made those findings of fact.

\* \* \* \* \* \*

"The Court could have considered other alternatives to closure. The Court could have requested of Mr. Klem exactly which persons he did want to remain in the courtroom, and the Court would readily have granted that request. If, for example, they were relatives of the family, there might not have been as much pressure on the children. The grandparents at the time remained quite friendly. I just use that as an example.

"If there were particular persons that the Defendant wanted in the courtroom, that request could have been made known, and that alternative considered.

The Court had no opportunity under the circumstances....

"I'm satisfied that under the circumstances of this case, no new trial should be granted on the basis of this issue. I certainly wish I had had an opportunity to rule more completely on that question, but I feel I was effectively deprived of that opportunity to apply the *Waller v. Georgia* procedures in this case. If given an opportunity, I certainly would have and could have, and there would have been no difficulty at all with this issue now."

I have examined Lyle's testimony, and, although I do not set it forth, I conclude that it would have been very traumatic for him to relate that testimony, about the sexual acts allegedly committed upon him by Klem, in front of the general public in open court. In my view, the facts testified to by Lyle clearly support the trial court's early concerns at the time of the prosecutor's closure motion and at the time of Klem's motion for new trial. In the interests of justice, however, I would remand for the trial court to conduct a hearing for the receipt of evidence and legal argument, and make findings in compliance with the procedure required by *Waller*.

If, after a new hearing, essentially the same findings are made, "a new trial presumably would be a windfall for the defendant, and not in the public interest [cite omitted]." *Waller*, 467 U.S. at 50, 104 S.Ct. at 2217, 81 L.Ed.2d at 41. A new trial should be required only if, after a hearing on remand, a newly assigned judge from outside the district in which the trial was held, concludes that with the exception of one representative of the media, the public, including relatives and friends of the defendant, may not be properly excluded during Lyle's testimony. Because my directions on remand would include a new trial only upon the conditions set forth herein, I must address the further claims made by Klem at this time.

### B. Challenges of jurors for cause

Klem contends that the trial court erred in not excusing two potential jurors for

cause, thus requiring that he exhaust his peremptory challenges, resulting in the seating of a juror that Klem wanted to excuse with a peremptory challenge.

Klem argues that the two challenged jurors were equivocal about their ability to return a not guilty verdict if Klem did not testify, about whether they thought Klem "had to prove" anything, about whether they could set their opinions aside, and about whether they could rely only on the evidence presented in court.

"[T]he formation of an opinion or impression regarding the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the evidence." Commentary to Standard 15–2.5, *Challenges for Cause*, III A.B.A. Standards for Criminal Justice p. 15.59 (2d ed. 1986) [quoting ALI Code of Criminal Procedure (1930)]. A prospective juror need not "be excused merely because he knows something of the case to be tried or has formed some opinions regarding it." 2 W. LaFave & J. Israel, *Criminal Procedure* § 21.3(c), p. 729 (1984). "The relevant question is not whether the community remembered the case, but whether the jurors at Yount's trial had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847, 856 (1984). As the court said in *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642–1643, 6 L.Ed.2d 751, 756 (1961):

> "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

*See also State v. Gross*, 351 N.W.2d 428 (N.D.1984), and *State v. Olson*, 290 N.W.2d 664 (N.D.1980), applying *Irvin v. Dowd*, *supra*.

A juror's partiality is a question of fact. *Patton v. Yount, supra*. The determination of a juror's partiality "is essentially one of credibility, and therefore largely one of demeanor." *Id.*, 467 U.S. at 1038, 104 S.Ct. at 2892, 81 L.Ed.2d at 858. "Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying." *Id.*, 467 U.S. at 1038 n. 14, 104 S.Ct. at 2892 n. 14, 81 L.Ed.2d at 858 n. 14 (1984). "[T]he manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case." *Reynolds v. United States*, 98 U.S. 145, 156, 25 L.Ed. 244, 247 (1879) (quoted in *Patton v. Yount, supra*, 467 U.S. at 1037 n. 12, 104 S.Ct. at 2892 n. 12, 81 L.Ed.2d at 858 n. 12). The trial court's resolution of questions about a juror's partiality is entitled to special deference. *Patton v. Yount, supra*. "[T]he question is whether there is fair support in the record for the [trial court's] conclusion that the jurors here would be impartial." *Id.*, 467 U.S. at 1038, 104 S.Ct. at 2892–2893, 81 L.Ed.2d at 858.

Klem argues that one of the two challenged potential jurors said he "might be able" to return a not guilty verdict if Klem did not testify, said that he thought Klem probably would have to establish his innocence, and "never equivocally [sic] stated that he could lay aside his opinions." Klem argues that the other challenged potential juror, when asked "if she could put aside completely and ignore what she had heard from other sources and rely only on what she had heard at the trial," replied that she was "not sure," that she "would try" to rely only on the evidence presented in court, and that she felt that Klem "had to prove" something.

While the potential jurors' responses relied upon by Klem were somewhat equivocal responses to questions put to them by defense counsel, their responses to ques-

tions put to them by the trial court were more definite. The following colloquy took place between the court and one of the challenged jurors:

"THE COURT: ... Will you be able to apply the law that Mr. Klem is in fact innocent and he doesn't have to prove anything?

"A That's right.

"THE COURT: He doesn't have to offer any evidence at all.

"A But, still in the back of my mind, you know, I will have that, but,—

"THE COURT: But can you set that aside?

"A I would hope so.

"THE COURT: And if you take the oath, will you be able to uphold the oath and follow the law as I tell you it is?

"A Yes.

"THE COURT: And part of that law would be that the State has to prove him guilty by proof beyond a reasonable doubt in this trial.

"A That's right.

"THE COURT: Not based upon anything you have heard before or not based upon any or probable cause determination, but, only on the evidence in this trial.

"A Right.

"THE COURT: And if the State does not come up with the quality or quantum of proof, would be you be able to return a verdict of not guilty even if the Defendant offers no evidence whatsoever?

"A I think so."

The following colloquy took place between the court and the other challenged juror:

"THE COURT: ... In a criminal case, the Defendant doesn't have to prove anything. The Defendant doesn't even have to offer any evidence unless he chooses to do so. Rather the sole burden of proof is on the State or the prosecution.... So, if I instruct you as to what the law is and if you take an oath to serve as a fair and impartial juror and render a true and fair verdict based only on the evidence in Court and the law, would you be able to obey that oath even though it would be difficult for you to do so as you acknowledged? Would you be able to set aside anything that you have heard, any hearsay or even if you don't think it's hearsay, set that aside and make your decision based only on what you hear in the Courtroom?

"A I would try to do my best, yes.

"THE COURT: And you would try to obey that oath?

"A Yes, I would.

"THE COURT: You're satisfied that that is what the law is and you would take the oath and you would do your duty?

"A Yes, I would do my duty.

"THE COURT: You would have some concern about how difficult it would be but you are satisfied that you would be able to perform your duty as a citizen to be a juror and a fair and impartial one in this case?

"A I think I could.

\* \* \* \* \* \*

"THE COURT: Well, Counsel, excuse me for interrupting again, but, if I tell you that the law is that you must regard Mr. Klem as innocent unless and until the State proves him guilty by proof beyond a reasonable doubt, would you be able to apply that law and regard and presume Mr. Klem to be innocent unless and until the State proves him guilty?

"A Yes, I could."

What the prospective jurors meant by their responses in *voir dire* was a question of fact for the trial court, who was in a position to judge their credibility and discern their conscientiousness. "The trial judge properly may choose to believe those statements that were the most fully articulated or that appeared to have been least influenced by leading." *Patton v. Yount,* 467 U.S. at 1040, 104 S.Ct. at 2893, 81 L.Ed.2d at 859. "[O]nly the trial judge could tell which of [the] answers was said with the greatest comprehension and certainty." *Id.*

As in *Patton v. Yount,* 467 U.S. at 1040, 104 S.Ct. at 2893, 81 L.Ed.2d at 859:

"We conclude that the *voir dire* testimony and the record of publicity do not reveal the kind of 'wave of public pas-

sion' that would have made a fair trial unlikely by the jury that was empaneled as a whole. We also conclude that the ambiguity in the testimony of the cited jurors who were challenged for cause is insufficient to overcome the presumption of correctness owed to the trial court's findings."

As a juror's partiality is a question of fact, the trial court's resolution, which is presumptively correct, is entitled to special deference, and ought not be reversed except in a clear case. *Patton v. Yount, supra.* A trial court's determination on whether a prospective juror should be dismissed for cause will not be disturbed unless the court abused its discretion. *State v. Gross,* 351 N.W.2d 428. From my review of the record, I conclude that the trial court could properly have determined that each of the challenged jurors could "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v. Dowd,* 366 U.S. at 723, 81 S.Ct. at 1642–1643, 6 L.Ed.2d at 756. I am, therefore, not persuaded that the trial court abused its discretion in refusing to dismiss the challenged jurors for cause.

### C. Prompt reporting requirement

Section 12.1–20–01, N.D.C.C., previously provided that prosecutions for various sex offenses involving minor victims could not be maintained "unless the alleged offense was brought to the notice of public authority within three months after a parent, guardian, or other competent person specifically interested in the victim, learned of the offense." [5] In *State v. Tibor,* 373 N.W. 2d 877 (N.D.1985), we held that the section was a statute of limitation, and that the State must prove either compliance with the limitation or an exception to it.

In *State v. Ford,* 377 N.W.2d 125, 126 (N.D.1985), we observed that "[w]hen there are issues of fact concerning the applicability of a statute of limitations, it is appropriate for the trial court to refer the matter to

the jury." Klem contends that the trial court "denied his right to have the jury decide the issue" of whether or not the prompt reporting requirement had been met. I disagree. It is important to note that in *State v. Ford, supra,* there was conflicting evidence as to when the mother of the minor victim of a sex offense learned of the offense, thus raising a factual issue for the jury to resolve. In my view there is no conflicting evidence justifying submission of the issue to the jury in this case. Klem argues that there is a dispute as to whether the offense was reported in October 1984 or October 1985, relying on Dr. Cook's reference to October 1984. Dr. Cook testified that his initial report said October 1984, but that he "meant 1985" and that "I would anticipate that I either misspoke as I dictated that or the secretary mistransposed '84 for '85." The other witnesses testifying about the reporting time testified to learning of the offense and reporting it in 1985. I am satisfied that there was no actual dispute as to the time involved.

### D. Contamination testimony

Klem asserts error in that "Dr. Cook was permitted to testify, over objection, that he entertained the opinion that [Lyle] had not been 'contaminated' by leading questions to tell a certain kind of story." He argues that asking Dr. Cook "to express an opinion as to whether [Lyle] had, in fact, been contaminated ... was tantamount to asking Dr. Cook whether he believed [Lyle] was telling the truth" and "invaded the province of the jury." I disagree.

Initially, I note that it was Klem's trial counsel who broached the subject of "contamination" when he initiated the following exchange with Dr. Cook: [6]

"Q Now, have you heard of the phrase contamination of witnesses in a child abuse case?

"A Yes.

"Q You know what I'm referring to?

---

5. The provision has been repealed by S.L.1987, Ch. 167, § 1.

6. We note that even what would otherwise be incompetent evidence may be admissible "when the adversary has *opened the door.*" *State v. Jensen,* 282 N.W.2d 55, 68 (N.D.1979).

"A Yes, I do.

"Q Is it possible that [Lyle] has been contaminated?

"A It's possible, yes, it is.

"Q Will you explain to the jury what we're referring to when we say contamination?

"A Well, if children are asked questions, incorrectly leading questions often enough, there is the worry that they will then begin to answer the questions the way the questioner wants them to be answered, and then that will become their standard answer. And this is why we try to be as careful as we can when we examine a person like this and not ask leading questions. If you ask the question did X do this to you, it may plant that in the child's mind that, yes, X did this or this adult wants me to say that, and then the child may answer—

"Q And you testified you attempted to avoid that in your examination of Lyle?

"A Yes, I did."

On redirect examination, Dr. Cook later testified as to how to determine whether or not a witness has been contaminated and also testified that, in his opinion, Lyle "was not contaminated."

The subject of testimonial contamination of a child witness through leading questions is one in which most jurors are not likely to have much, if any, experience. Thus, Dr. Cook's opinion could "be of appreciable help to the jury in a field in which the ordinary juror needs help" [*State v. Carroll*, 123 N.W.2d 659, 673 (N.D.1963)], especially after his testimony that it was "possible" that Lyle had been contaminated. We do not believe Dr. Cook's testimony "lent a stamp of undue legitimacy" [*State v. Logue*, 372 N.W.2d 151, 157 (S.D. 1985)] to Lyle's testimony. Nor is this a case like *United States v. Azure*, 801 F.2d 336 (8th Cir.1986), where an expert on child abuse "was allowed to testify that Wendy was believable and that he could 'see no reason why she would not be telling the truth in this matter'" (*Id.* at 339), thus "putting his stamp of believability on Wendy's entire story." *Id.* at 340. Dr. Cook

only testified that Lyle had not been contaminated by incorrectly leading questions. Dr. Cook did not give an "opinion of the accuracy, reliability or credibility of a particular witness in the case being tried." *State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986). I conclude that the trial court did not err in allowing Dr. Cook to testify that, in his opinion, Lyle had not been "contaminated."

*E. Exclusion of polygraph evidence*

Klem asserts that the trial court abused its discretion in refusing to permit a polygraph examiner to express his opinion as to whether or not "Klem was telling the truth when he denied sexual contact with [Lyle]."

In *Healy v. Healy*, 397 N.W.2d 71, 74 n. 1 (N.D.1986), we summarized our polygraph jurisprudence:

"In *State v. Pusch*, 77 N.D. 860, 46 N.W. 2d 508 (1950), this court held that the results of a polygraph examination are not admissible in a criminal trial. *See also State v. Swanson*, 225 N.W.2d 283 (N.D.1974). However, where the prosecution and defense have stipulated to the admissibility of polygraph test results for the purposes of a motion for new trial, we have held that the court must consider the results in determining the merits of the motion. *State v. Yodsnukis*, 281 N.W.2d 255 (N.D.1979); *State v. Olmstead*, 261 N.W.2d 880 (N.D.), *cert. denied*, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978). In *Shulze v. Satran*, 368 N.W.2d 531 (N.D.1985), and *Varnson v. Satran*, 368 N.W.2d 533 (N.D.1985), we further held that it was not a violation of due process to allow a prison inmate to voluntarily submit to a polygraph examination and for the prison's Adjustment Committee and Parole Board to consider the results of the test, along with other evidence, in disciplinary proceedings and parole-release determinations."

In *State v. Newnam*, 409 N.W.2d 79 (N.D. 1987), we recently held that the trial court did not abuse its discretion in excluding the results of polygraph examinations, where the defendant did not offer any evidence of

the reliability of polygraph examinations. Thus, polygraph results generally are not admissible in criminal trials in North Dakota unless the prosecution and defense have stipulated to their admissibility, at least where there is no evidence of the scientific reliability and acceptance of the results of polygraph examinations. We note that polygraph test results are also generally not admissible in federal courts. Annotation, *Modern Status Of Rule Relating To Admission Of Results of Lie Detector (Polygraph) Test In Federal Criminal Trials,* 43 A.L.R. Fed. 68, § 3 (1979).

The prosecution and defense did not stipulate to the admissibility of the results of a polygraph examination. Klem made an offer of proof on the record. While Klem did offer to prove that the "polygraph is widely and commonly accepted in the law enforcement community" and offered to prove that "the polygraph examination is commonly accepted in the business employment community," he did not offer to prove that polygraph examinations are accepted as reliable in the scientific community. I conclude that the trial court did not abuse its discretion in excluding the proffered polygraph examination results.

For the reasons stated, I would reverse and remand this case for a hearing and findings on whether or not, with the exception of one representative of the media, the public, including friends and relatives of the defendant, should be excluded during Lyle's testimony and for entry of an order granting a new trial only if the trial court concludes that the public should not be excluded. If the court does not so conclude, it should enter a new judgment of conviction. To encourage a completely new and independent view of this issue and the facts relevant to it, unencumbered by having been involved in considering this issue heretofore first at the time of the closure motion and then again at time of hearing of the motion for new trial, I would reassign this case to a new district court judge, outside the judicial district in which the case was tried, for proceedings subsequent to this appeal.